MINNIE FRANK, Plaintiff-Appellant, v. TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA et al., Defendants-Appellees.

First District (1st Division)   No. 61534

Opinion filed March 28, 1977.

Arnold I. Shure and Gerald White, both of Chicago (Anthony Hume and Robert J. Peters, of counsel), for appellant.

Bernard E. Epton, Lawrence A. Berman, Morris I. Leibman, Newton N. Minow, Henry L. Mason, III, and Kirk B. Johnson, all of Chicago (Epton & Druth, Ltd., and Sidley & Austin, of counsel), for appellees.

Mr. JUSTICE BUA delivered the opinion of the court:

This is an interlocutory appeal under Supreme Court Rule 308 (Ill. Rev. Stat. 1973, ch. 110A, par. 308) raising the question of whether, in a suit brought on behalf of some 400,000 annuitants holding contracts with the defendant insurance companies, seeking reformation of those contracts so as to provide for a cash surrender value, due process requires that the named plaintiff notify absent class members of the pendency of the litigation. The trial court answered this question in the affirmative. We disagree, finding such notice to be unnecessary under the circumstances.

## I. FACTS AND PROCEDURAL HISTORY

The defendants, Teachers Insurance and Annuity Association of America and its companion organization, College Retirement Equities Fund (hereinafter referred to as TIAA and CREF respectively), are nonprofit limited liability life insurers providing a nationwide retirement plan for employees of educational institutions and nonprofit research organizations. TIAA was organized in 1918 to serve as a replacement for the free pension program which had failed under the Carnegie Foundation for the Advancement of Teaching. CREF was established by a special act of the New York Legislature in 1952. Employee contributions, matched or exceeded by employers, now fund the purchase of annuity contracts. Presently, approximately 500,000 individuals, employed at 2,375 educational institutions, hold contracts having an aggregate accumulation of about $5 billion.

In April 1957, the plaintiff, Dr. Minnie Frank, employed as an associate professor of pediatrics at Chicago Medical School, purchased retirement annuity contracts from TIAA and CREF. These contracts were to provide

lifetime retirement annuities to the plaintiff commencing in July 1986, or at any earlier date the plaintiff chose, but the language of the contracts specifically indicated that no provision was made for a cash surrender value.

From April 1957 to March 1961, Dr. Frank made premium payments totaling $976.06 to TIAA and $976.06 to CREF, which were matched by her employer. After this, however, neither Dr. Frank nor her employer made any further payments, and she was informed that her contracts were being placed on a paid-up basis. In late 1964, Dr. Frank left the employ of Chicago Medical School.

In June 1966, Dr. Frank's husband, Marvin Lustgarten, acting as her attorney, wrote the defendants asking for advice as to the terms under which the annuity contracts could be reduced to their cash value. In a letter the defendants replied that because of the overall structure of the TIAA-CREF retirement plan, it would not be actuarially sound to permit annuitants to surrender their contract benefits for cash or borrow upon them from TIAA-CREF. About two months later, Mr. Lustgarten again wrote the defendants, asking whether there were any circumstances under which they would pay the cash value of the annuity contracts in a lump sum. In response to this, the defendants sent him their circular, "Repurchase of Retirement Annuities," detailing certain limited circumstances in which it was the policy of TIAA-CREF to waive the "no cash surrender" provisions of an annuity contract and "repurchase" it for a cash lump sum. The conditions for repurchase specified were essentially that the annuitant no longer be employed by a participating institution, that his contract either be no more than 5 years in force or have a "repurchase value," as defined in the circular, of no more than $2,000, and that institutions having contributed toward his annuity consent to the repurchase. Accordingly, the defendants declined to repurchase the plaintiff's annuity contract since it had been in force for more than five years and had a repurchase value well in excess of $2,000.

After some further communication with the defendants, Mr. Lustgarten, on behalf of his wife as the named plaintiff, filed this class action in February 1972 seeking reformation of the TIAA-CREF annuity contracts so as to provide for a right in all annuitants to surrender their contracts before maturity for cash value. Plaintiff's original complaint sought relief on behalf of all persons "similarly situated," charging that the defendants, by their practices regarding the repurchase of certain annuity contracts were allowing improper modification of those contracts at the whim of third parties, namely those in a position to give the consent of contributing employer institutions, and were themselves pursuing a discriminatory policy in permitting only certain favored annuitants or

"corporate insiders" to obtain the cash value of their contracts. Although not explicitly alleged, it is clear that the plaintiff felt these actions to be in violation of certain provisions of the New York Insurance Code.[1]

In response to the defendants' subsequent motion to strike the complaint, the trial court made various findings of law and fact. Basically, these were (1) that because of their conflicting interests in the maintenance of the defendants' repurchase restrictions, those annuitants who qualified under the restrictions and those annuitants, including the plaintiff, who did not each constituted a separate "class", and that accordingly, the plaintiff could only represent the class of those who did

[1] We note that each of the plaintiff's contracts, as did all of the TIAA-CREF contracts, contained express provisions stating that the contracts were made and were to be performed in New York, and that New York law should govern as to questions of their validity and effect. This avoids the potentially disruptive effects of the complex choice of law problems which might arise where a large multistate class is involved. (See *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, 287 N.E.2d 519.)

The particular provisions of New York law here relevant are sections 209 and 211 of the New York Insurance Code (N.Y. Ins. Code §§209, 211 (McKinney 1966), which provide in pertinent part as follows:

"§209. *Life, accident and health insurance; discrimination and rebating; prohibited inducements and interdependent sales.* 1. No life insurance company doing business in this state and no savings and insurance bank shall make or permit any unfair discrimination between individuals of the same class and of equal expectation of life, in the amount or payment or return of premiums, or rates charged by it for policies of life insurance or annuity contracts, or in the dividends or other benefits payable thereon, or in any of the terms and conditions thereof; and no such company and no such savings and insurance bank shall knowingly permit, and no agent thereof shall offer to make or make, any contract of life insurance or annuity contract or agreement as to such contract other than as plainly expressed in the policy issued thereon; and no such company and no such savings and insurance bank and officer, agent, solicitor or representative thereof, shall pay, allow or give, or offer to pay, allow or give, directly or indirectly, as an inducement to any person to insure, or shall give, sell or purchase, or offer to give, sell or purchase, as such inducement, or interdependent with any policy of life insurance of annuity contract, any stocks, bonds, or other securities or any dividends or profits accruing or to accrue thereon, or any valuable consideration or inducement whatever not specified in such policy or contract; nor shall any person in this state knowingly receive as such inducement, any rebate of premium or any special favor or advantage in the dividends or other benefits to accrue on any such policy or contract, or knowingly receive any paid employment or contract for services of any kind, or any valuable consideration or inducement whatever which is not specified in such policy or contract * * *."

"§211. *Misrepresentations, misleading statements and incomplete comparisons by insurers.*

1. No insurer authorized to do in this state the business of life, health or accident insurance or to make annuity contracts shall issue or circulate, or cause to permit to be issued or circulated on its behalf, any illustration, circular, statement or memorandum misrepresenting the terms, benefits or advantages of any policy or contract issued or to be issued by any such insurer.

* * *

3. In any determination, judicial or otherwise, of the incompleteness or misleading character of any such comparison or of any such representation, it shall not be presumed that the insured knew or knows of any of the provisions, terms or benefits contained in any insurance policy or contract."

*not* so qualify, (2) that as regards those annuitants who qualified under the repurchase restrictions, there was no illegal discrimination, since section 209 of the New York Insurance Code forbids only discrimination *among* the members of the same "class", and further that the repurchasing practices of the defendants did not amount to a "contract or agreement" outside of the express terms of the writing so as to violate section 211, but rather simply constituted a voluntary and retractable offer by the insurer of a benefit or concession to the insured, which could be properly made on a nondiscriminatory basis and under such conditions as the insurer saw fit, and (3) that with regard to those annuitants who did *not* qualify under the repurchase restrictions, the complaint alleged a secret program of discriminatory repurchasing in favor of certain "privileged insiders" only.

In her second amended complaint, again seeking reformation of the contracts but only on behalf of those who did not qualify under the repurchase restrictions, the plaintiff more explicitly set forth a number of ways in which the defendants' policies and practices allegedly violated section 209 and section 211 of the New York Insurance Code. First, it was alleged that by their active, written misrepresentations, both in the language of the contracts and in the letter with which they would routinely respond to inquiries regarding surrender for cash, the defendants had caused annuitants to "sleep on their rights" to surrender their contracts for cash under the provisions of "Repurchase of Retirement Annuities" until such rights had ceased to exist. Secondly, it was alleged that the repurchase restrictions set forth in that circular were in themselves an unfair discrimination among annuitants of the same class. Finally, certain allegations essentially equivalent to those made in the original complaint were restated. These were that there was discrimination in favor of certain corporate insiders regardless of their status under the repurchase restrictions, that the repurchase plan constituted a contract or agreement outside of the written contract, and that the repurchase of annuity contracts amounted to a benefit or consideration given to annuitants yet not recited in the written contracts.

In response to plaintiff's second amended complaint, the defendants filed an amended answer together with a motion to strike and dismiss or in the alternative to order notice to absent class members. Two principal lines of defense were raised in the motion to strike and dismiss and repeated as affirmative defenses in the amended answer. The first of these was that all of plaintiff's theories had either been disposed of by the trial court's earlier findings or were offered wholly without factual support. We believe that the allegations of the second amended complaint concerning an agreement external to the written contract and the giving of unrecited consideration were expressly precluded by the court's prior findings. Further, it would appear highly doubtful that given the trial

court's view that all annuitants not qualifying under the repurchase restrictions constituted the plaintiff class, and that section 209 of the New York Insurance Code forbids only discrimination *among* the members of such a "class",[2] the plaintiff's allegations that the repurchase restrictions in themselves amount to an improper discrimination could be deemed to state a cause of action. However, since the trial court, in its order of February 10, 1975, denied the motion to strike and dismiss as untimely, and made no specific comments as to the "affirmative defense" that the plaintiff had failed to state a cause of action, we will concern ourselves with all those allegations of the second amended complaint not expressly precluded by the trial court's prior findings.

The second line of defense raised in the motion and answer was that a class action could not be maintained since the plaintiff did not adequately represent the class members. This the court rejected, finding in its order that all of the prerequisites of a class action, including the adequacy of representation, had been satisfied.[3]

On the motion to order notice, however, the court ruled favorably, ordering that the plaintiff give individual written notice to all class members who could be identified, informing them of the pendency of the action, its nature, the fact that the terms of their annuity contracts might be altered, and the fact that they could choose to opt out of the action or, if they did not so choose, could intervene.

Finally, the court, on its own motion, joined by counsel for the plaintiff, found that, in accordance with Supreme Court Rule 308 (Ill. Rev. Stat. 1973, ch. 110A, par. 308), "* * * the portion of this order pertaining to the giving of notice is a substantial ground for * * * difference of opinion, and that an immediate appeal from this order will materially advance the ultimate termination of the litigation." The court then identified the crucial question of law as follows:

> "Whether due process of law under the 14th Amendment of the United States Constitution and Article I, Section 2 of the Illinois Constitution, requires that Plaintiff in the case before this Court notify the absent members of the class of annuity contract holders

---

[2] We do not here indicate our approval of this view. The trial court's view seems to rest upon the belief that what constitutes a class for purposes of a class action must also constitute a "class" within the meaning of section 209 of the New York Insurance Code. Given this interpretation it would seem impossible for any kind of discrimination among annuitants to be deemed improper in the context of a class action, since section 209 by its terms only forbids discrimination between the members of a "class" of annuitants.

[3] Further, the court granted Mr. Lustgarten's motion to withdraw as counsel, made pursuant to the court's suggestion that since he was the plaintiff's husband his continued participation as counsel might constitute an important basis for objection to the class action. See, *e.g.*, *Stull v. Pool* (S.D.N.Y. 1974), 63 F.R.D. 702; *Barliant v. Houghton Mifflin Co.* (1st Dist. 1977), 45 Ill. App. 3d 494, 359 N.E.2d 886.

*whose contracts she seeks to have reformed of the pendency of this action.*

This Court is of the opinion that due process of law, as interpreted by the United States Supreme Court in *Eisen v. Carlisle & Jacquelin*, 40 L. Ed. 2d 732, decided May 28, 1974, and other cases, requires that Plaintiff, in the circumstances before this Court, inform the members of the class of contract holders she seeks to represent of the pendency of this action. Due process of law requires that these persons be given an opportunity to participate in or to withdraw from this lawsuit.

There is no statute nor rule in Illinois governing the question of notice to class members in a class action, and case law falls short of deciding the point. There is an over-powering need for resolution of the question by the Illinois courts of review, so that the ultimate termination of this and similar other litigation may be materially advanced. Class actions will then be enabled to proceed with greater dispatch along recognized and defined procedural paths." (Emphasis added.)

On May 28, 1975, this court, after considering written arguments presented by the parties, granted leave to appeal under Supreme Court Rule 308 solely for the purpose of considering the notice question certified by the trial court. We turn then to that question.

## II. THE NOTICE QUESTION

■■ At the outset, we note that there has been considerable discussion, both here and before the trial court, concerning the abstract issue of whether notice to absent parties is an "essential element" of due process in class actions or whether adequate representation of those parties' interests is the sole "touchstone" of due process. We do not intend to make a decision in such broad terms. On one hand, even the defendants do not go so far as to argue, nor could this court conceivably accept the notion that due process requires some form of notice in *all* class actions. This view has been overwhelmingly rejected.[4] On the other hand, it would also be unwise and unnecessary for us to base our decision on the notion that due process could never require some form of notice of the pendency of an Illinois class action. We must search for more specific guidance.

As regards the issue of pretrial notice in class actions, Illinois law offers the simple proposition that it is not required, by due process or otherwise. The only reference to class actions in an Illinois statute or rule of procedure is contained in section 52.1 of the Civil Practice Act (Ill. Rev.

---

[4] See the text and citations following the quoted portion from *Wright and Miller, infra,* and see especially the discussion in *Larionoff v. United States* (D.C. Cir. 1976), 533 F.2d 1167, 1184-86.

Stat. 1973, ch. 110, par. 52.1), which provides for *discretionary* notice to absent parties of the *dismissal* or *settlement* of a class action.[5] While the Illinois courts have often discussed the need for adequate representation of the interests of absent class members as a matter of due process, they have generally not addressed themselves to the question of whether due process might require notice. (See, *e.g.*, *Smyth v. Kaspar American State Bank* (1956), 9 Ill. 2d 27, 136 N.E.2d 796; *State Life Insurance Co. v. Board of Education* (1946), 394 Ill. 301, 68 N.E.2d 525; *Langson v. Goldberg* (1940), 373 Ill. 297, 26 N.E.2d 111; *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 305 N.E.2d 236; *Kimbrough v. Parker* (1951), 344 Ill. App. 483, 101 N.E.2d 617; *South East National Bank v. Board of Education* (1938), 298 Ill. App. 92, 18 N.E.2d 584.) Perhaps the most illuminating passage in the modern Illinois case law regarding pretrial notice in class actions is the brief statement, offered in what is clearly dicta and without citation or analysis whatsoever, that "Illinois does not require mandatory notice to identifiable class members before a class can be certified." *Midway Tobacco Co. v. Mahin* (1976), 42 Ill. App. 3d 797, 806, 356 N.E.2d 909, 917.

We are unwilling, however, to simply deduce from this authority the result that due process does not require notice in the present case. Not only is this "no-notice" rule somewhat doubtful in its origin, but we are further led to skepticism by the fact that it has been adhered to without consideration of more recent authoritative pronouncements on the notice issue, or re-evaluation in light of the fundamental evolutionary changes which class actions in Illinois have undergone since the 1940's.

Initially, there is some doubt that the cases which apparently constitute the basis for the no-notice rule in Illinois, *Hansberry v. Lee*[6] (1940), 311 U.S. 32, 85 L. Ed. 22, 61 S. Ct. 115, and *Newberry Library v. Board of Education* (1944), 387 Ill. 85, 55 N.E.2d 147, can be properly relied upon to support such a principle. The logic and language of *Hansberry*, on which the court in *Newberry* relied for its due process analysis, is sufficiently uncertain and ambiguous to be subject to a reasonable interpretation contrary to that apparently given it by the Illinois courts. Specifically, there is considerable basis for the contention that

---

[5] Section 52.1 of the Civil Practice Act provides:
  "An action brought on behalf of a class shall not be compromised or dismissed except with the approval of the court and, unless excused for good cause shown, upon notice as the court may direct."
Regarding this provision, the Illinois Supreme Court has said:
  "Neither section 52.1 of the Civil Practice Act nor the requirements of due process as suggested in *Eisen* requires individual notice to all members of the class in all circumstances." *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 312, 335 N.E.2d 448, 454.

[6] *Hansberry v. Lee* is the leading case decided by the United States Supreme Court regarding the requirement of adequate representation of absent class members.

*Hansberry's* ostensible holding that adequate representation is the sole requisite of due process in all class actions merely reflects the fact that the *Hansberry* court, finding on the facts before it inadequate representation, never reached the further issue of whether due process might in some or all cases require notice to absent class members. See 4 Creighton L. Rev. 268, 294-98 (1971); 33 Cornell L.Q. 327 (1948).

Further, later decisions of the Federal courts, including the United States Supreme Court, have raised the fairly strong implication that in certain class actions some form of pretrial notice may be required as a matter of due process. Herein lies the significance of *Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140, insofar as this appeal is concerned. In *Eisen,* the plaintiff alleged that the practice of the defendant brokerage firms of charging an additional fee or "odd-lot differential" for transactions on the New York Stock Exchange other than in multiples of 100 shares violated securities and antitrust laws. He sought relief in the form of money damages on behalf of himself and the class of individuals having traded odd lots during a certain four-year period. While the District Court had ordered a less burdensome plan, involving notification of class members by publication,[7] the Supreme Court held that since this class action was of the type described by subdivision (b)(3) of Rule 23 of the Federal Rules of Civil Procedure, individual notice to all class members who could be identified and located with reasonable effort, as required by a literal application of Rule 23(c)(2),[8] was necessary.

Though it is clear that this holding was not actually based on due process grounds, but rather on the "express language and intent of Rule 23(c)(2)"[9] (417 U.S. 156, 175, 40 L. Ed. 2d 732, 747, 94 S. Ct. 2140), much in the *Eisen* opinion indicates the court's approval of the notion underlying subdivision (c)(2), that due process may require at least some

---

[7] *Eisen v. Carlisle & Jacquelin* (S.D.N.Y. 1971), 52 F.R.D. 253.

[8] Fed. R. Civ. P. 23(c)(2) is set out in note 18, *infra.*
See also 18 Trial Lawyer's Guide 403 (1974).

[9] It seems clear that Justice Powell sought to rest the *Eisen* holding on the "express language and intent of Rule 23(c)(2) (417 U.S. 156, 175, 40 L. Ed. 2d 732, 747, 94 S. Ct. 2140, 2151). Thus, in rejecting the plaintiff's contention that notice was not required, the court was careful to add in a footnote the caveat that:

> "We are concerned here only with the notice requirements of subdivision (c)(2), which are applicable to class actions maintained under subdivision (b)(3). By its terms subdivision (c)(2) is inapplicable to class actions ° ° ° maintained under subdivision (b)(2) [or (b)(1)]" 417 U.S. 156, 177 n. 14, 40 L. Ed. 2d 732, 748 n. 14, 94 S. Ct. 2140, 2152 n. 14.

On this point the Illinois Supreme Court has said:

> "*Eisen* was decided under the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure. Although notice to absent class members as it relates to due process was discussed in *Eisen,* that constitutional requirement was not the basis of the *Eisen* decision." *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 311, 335 N.E.2d 448, 453.

form of notice in certain class actions.[10] For example, apparently in order to help justify its literal interpretation of Rule 23(c)(2), the Court, in the context of discussing the "intent" behind that provision, cited and explained at some length two cases in which it had held that due process required individual notice, rather than notice by publication, *Mullane v. Central Hanover Bank and Trust Company* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652, and *Schroeder v. City of New York* (1962), 371 U.S. 208, 9 L. Ed. 2d 255, 83 S. Ct. 279, a case which followed and expanded upon *Mullane*. *Mullane* held that in a special representative proceeding created under New York law for the purpose of reaching a binding judicial settlement of the accounts of the trustees of a common trust fund due process required that individual notice be sent to all beneficiaries whose names and addresses were known. This holding was deduced from the principle that due process required notice and an opportunity to be heard "appropriate to the nature of the case" (339 U.S. 306, 313, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657), applied "in view of the character of the proceedings and the nature of the interest here involved * * *." (339 U.S. 306, 317, 94 L. Ed. 865, 875, 70 S. Ct. 652, 659.) While it is unclear whether the Court felt that due process as interpreted by *Mullane* and *Schroeder* would require *individual* notice under the facts of *Eisen*, the Court's use of *Mullane* and *Schroeder* seems clearly to reflect the view that they are relevant to the problem of due process in modern class actions, and hence that in such cases notice may be an important instrumentality of due process.[11]

In *Eisen*, a class action under subdivision (b)(3), the court was able to

---

[10] The Advisory Committee's Note to Rule 23 makes it clear that the Advisory Committee thought that due process required prejudgment notice in Rule 23(b)(3) cases:

"This mandatory notice pursuant to subdivision (c)(2), together with any discretionary notice which the court may find it advisable to give under subdivision (d)(2), is designed to fulfill requirements of due process to which the class action procedure is of course subject." 39 F.R.D. 69, 106-107, citing *Mullane v. Central Hanover Bank and Trust Company*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), and similar cases.

In his fine analysis of the structure and language of the *Eisen* opinion, in which he concludes that several portions of that opinion are indicative of the view that due process may well require some form of pretrial notice, if not individual notice, in (b)(3) type actions, Professor Dam remarks:

"A close reading of Mr. Justice Powell's opinion suggests that he did not want to base the notice holding on the Constitution. Yet his plain meaning methodology in interpreting the Rule apparently does not satisfy even him. He returns time and again to due process considerations to give plausibility to his literalist interpretation of the Rule." 1974 Sup. Ct. Rev. 97, 110.

[11] This has led some courts to remark that especially in view of its affirmance in *Eisen*, *Mullane* must be seen to overrule *Hansberry v. Lee* to the extent of any inconsistency with *Mullane*. See, *e.g.*, *Watson v. Branch County Bank* (W.D. Mich. 1974), 380 F. Supp. 945, 959 n. 10.

base its holding on the language of Rule 23 itself. However, where the notice issue has arisen in the context of a (b)(1) or (b)(2) class action, the courts have had to respond in terms of a due process analysis, since Rule 23 does not make notice mandatory in such cases.[12] While the great majority of Federal courts have found that notice is not generally required by due process in (b)(1) or (b)(2) actions, these holdings have been derived from a due process or "fairness" theory which would indicate the need for pretrial notice in many if not all (b)(3) actions.[13] Further, it has often been suggested that notice may even be required as a matter of due process in some (b)(1) or (b)(2) cases, where "special circumstances" exist. (See, *e.g., Katz v. Carte Blanche Corp.* (3d Cir. 1974), 496 F.2d 747, *cert. denied*, 419 U.S. 885, 42 L. Ed. 2d 125, 95 S. Ct. 152 (1974); *Wetzel v. Liberty Mutual Ins. Co.* (9th Cir. 1975), 508 F. 2d 239, *cert. denied*, 421 U.S. 1011, 44 L. Ed. 2d 679, 95 S. Ct. 2415.) These cases too, then, lend strong support to the notion that due process may require notice in a class action.

■■■ Finally, we are not persuaded by the plaintiff's argument that even if notice is required by due process in some class actions under Rule 23, it is not needed in Illinois because the "community of interest"[14] standard which governs the maintenance of Illinois class actions necessarily insures analogy to those cases under Rule 23 in which due process has been held not to require notice. In more recent years the traditionally very strict requirements for the maintenance of a class action in Illinois have been diluted considerably, making way for class adjudication in which the interests of the individual class members as such

---

[12] The notice provisions of Rule 23 are set out in full in note *18, infra.*

[13] See the text surrounding the passage quoted from *Wright & Miller, supra.*

[14] The basic test for the maintainability of a class action in Illinois is whether there is a "community of interest" among the class members. A typical explanation of this test is found in *Moseid v. McDonough* (1968), 103 Ill. App. 2d 23, 243 N.E.2d 392. Essentially this same language is repeated in a great many cases.

"Factors to be considered in applying this test are: Whether the claims of all members of the class share a common question of law and fact, such as the existence of a common fund from which relief can be given (Kimbrough v. Parker, 344 Ill. App. 483, 486, 101 N.E.2d 617; Flanagan v. City of Chicago, 311 Ill. App. 135, 160, 35 N.E.2d 545); whether the causes of action of the members of the class arise from the same transaction (Peoples Store of Roseland v. McKibbin, 379 Ill. 148, 154, 39 N.E.2d 995; Material Service Corp. v. McKibbin, 380 Ill. 226, 236, 43 N.E.2d 939); whether one party can adequately represent the rights and interests of all other members of the purported class (Newberry Library v. Board of Education, 387 Ill. 85, 90, 55 N.E.2d 147); whether the number of possible class members renders separate litigation impossible or impractical (South East Nat. Bank of Chicago v. Board of Education, 298 Ill. App. 92, 114, 18 N.E.2d 584); and whether there exists a purely equitable cause of action (Fetherston v. National Republic Bancorporation, 280 Ill. App. 151, 160)." 103 Ill. App. 2d 23, 27-28.

are more distinct and predominant.[15] For example, the need for a "common fund" has been seriously questioned, in a particularly well-reasoned opinion (see *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 305 N.E.2d 236, *appeal dismissed*, 60 Ill. 2d 529), and the notion that the individual rights asserted must arise out of the same transaction has been replaced by the requirement that common questions of law and fact simply "predominate" over other questions.

(Compare *Newberry Library v. Board of Education* (1944), 387 Ill. 85, 55 N.E.2d 147, with *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 155 N.E.2d 595, and *Rosen v. Village of Downers Grove* (1960), 19 Ill. 2d 448, 167 N.E.2d 230.) Further, although a class action in Illinois must state an equitable cause of action, or, in other words, seek "equitable" relief, this requirement had been interpreted so as to permit class actions in which the principal relief sought was monetary. See *Perlman v. First National Bank; Kimbrough v. Parker* (1951), 344 Ill. App. 483, 101 N.E.2d 617.

Of even greater significance than these specifics, however, is the fact that because the "community of interest" concept is a creature of the common law, not set forth in a fixed statute or rule of procedure, and seldom if ever systematically approached,[16] this evolution of the Illinois class action appears very likely to continue.

■■ We would, then, not be content to rest our decision on the view that pretrial notice can never be required by due process in an Illinois class action. If there is any certain truth regarding the notion of due process as it is embodied in American constitutions, it is that " 'Due process' is an elusive concept. Its exact boundaries are unidentifiable and its content varies according to specific factual contexts." (*Hannah v. Larche* (1960), 363 U.S. 420, 442, 4 L. Ed. 2d 1307, 1321, 80 S. Ct. 1502, 1514.) What we must decide then is whether, given all of the circumstances of the present case, the best-considered notions of fairness

---

[15] It is this distinctness and predominance of individual interests which is the essential characteristic of (b)(3) actions under Rule 23, and which is at the root of concern over the need for pretrial notice in such cases.

[16] Perhaps the greatest difficulty with the "community of interest" test as set forth in the Illinois cases is that it lacks any clear structure. As one author has said:

"In *Moseid v. McDonough*, the First Appellate District stated that the test to be applied in determining whether a class action is maintainable focuses on the existence of a community of interest in the subject matter and in the remedy. To apply this test, the court listed factors to be 'considered.' The factors are overlapping and to a degree extraneous. There is no indication as to which factor is 'considered' first, or as to which factors are critically necessary. No interpretation is provided for the directive to 'consider' these factors. This passage merely compiled elements of a class action discussed in past opinions and fails to provide adequate guidance for courts or litigants. The reliance placed on this listing indicates that the lower courts of Illinois have no clear conception of the precise requirements for maintaining a class action in this state." 68 N.W.L.Rev. 1094, 110-45 (1974).

demand that absent class members be notified of the pendency of this action.

Although we have failed to find any useful guidance on this difficult issue in the law of Illinois, there is a great body of useful precedent in the decisions of the Federal courts concerning the need for notice in various types of class actions. In order to best understand these Federal cases, however, it is first necessary to consider briefly Rule 23 of the Federal Rules of Civil Procedure, in the context of which they were decided.

I order to be maintained as a class action under Rule 23, an action must satisfy all four of the requirements of Rule 23(a), and additionally must meet one of the three conditions of Rule 23(b).[17] Subdivision (b)(1) permits class actions to be maintained where individual actions by or against members of the class could result in unfairness, either by subjecting the party opposing the class to incompatible standards of conduct or by as a practical matter disposing of or substantially impairing the rights of absent class members. Under subdivision (b)(2) a class action is allowed where the party opposing the class has acted or refused to act on grounds generally applicable to the class so as to make appropriate

---

[17] Rule 23(a) and (b) provide:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

final injunctive or declaratory relief with respect to the class. Finally, subdivision (b)(3) includes all other cases in which questions of law or fact common to the class predominate over individual questions and where class adjudication would be "superior" to available alternatives. Actions under (b)(3) are generally those in which the principal relief sought is monetary damages.

With respect to the issues of notice to absent class members and the binding effect of final judgments, Rule 23 draws a sharp distinction between actions brought under subdivision (b)(3) and other class actions.[18] In (b)(3) actions, class members are given the right to exclude themselves from the binding effect of any judgment reached, and the right to personally intervene in the action. Further, the court is directed to order that individual notice be sent to all class members who can be identified through reasonable effort, informing them of the pendency of the action and of their rights to opt out or intervene. In non-(b)(3) actions no right to opt out of or intervene in the litigation is afforded, and it is suggested that the court might order such notice as it deems necessary in order to protect class members and insure the overall fairness of the litigation.

The logic of these provisions rests upon a rough dichotomy. On one hand are those class actions in which the nature of the individual interests

---

[18] Rule 23(c)(2) and (3) provide:

"(2) in any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members, who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class."

Rule 23(d)(2) provides:

(d) Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders. ° ° ° (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action. ° ° °

Clearly these notice provisions were seen by the drafters of Rule 23 to reflect the demands of due process. (See note 10, *infra*.)

involved and the likelihood of special defenses or issues peculiar to some member or members of the class make it unfair to bind absent class members without their consent. In these cases, falling under subdivision (d)(3), it is necessary to provide individual notice to as many members of the class as is practicably possible, in order to permit them to effectively exercise their right to opt out or intervene.[19] On the other hand are class actions in which a binding adjudication without the consent of absent class members would not be on balance unfair. In these situations, described by subdivisions (b)(1) and (b)(2), due process can generally be satisfied by simply assuring adequate representation of those absent members' interests. There being no special need for individual notice in order to effectuate a right to opt out, the need for some form of notice as a matter of due process is determined solely by the extent to which the effect of such notice would be to further the fairness of the proceedings in other ways.

The substance of this dichotomy then is crucial to a determination of the function of and hence the need for notice to absent class members. At its heart is the concept of the "cohesiveness" of the (b)(1) or (b)(2) class as compared to the (b)(3) class. As Wright and Miller have so aptly put it:

"* * * Nonetheless, a few courts have concluded that notice is so important as a due process guarantee for the absent class members that the requirement also applies to all actions brought under the first two subdivisions of Rule 23(b). Not only is this approach directly contrary to the language of Rule 23, itself, but it fails to take account of the reasons justifying the different treatment accorded actions under Rule 23(b)(3) and those brought under either Rule 23(b)(1) or Rule 23(b)(2).

In representative actions brought under the other provisions of Rule 23(b) [provisions other than 23(b)(3)], the class generally will be more cohesive, for example, in many instances each member will be affected as a practical matter by a judgment obtained by another member if individual actions were instituted. Similarly, it is less likely that there will be special defenses or issues relating to individual members of a Rule 23(b)(1) or Rule 23(b)(2) class, than in the case of a Rule 23(b)(3) class. This means that there is less reason to be concerned about each member of the class having an opportunity to be present. Thus, in suits under subdivisions (b)(1) or (b)(2), once the court determines that the members are adequately represented as required by Rule 23(a)(4) it is

---

[19] The logical alternative means of achieving this same end of fairness is to deny the judgment any binding effect on those who do not opt-in. This was the approach taken by the original Rule 23 (prior to its revision in 1966) with respect to "spurious" class actions, the rough equivalent of today's (b)(3) actions.

reasonably certain that the named representatives will protect the absent members and give them the functional equivalent of a day in court.

In keeping with this philosophy, class members in Rule 23(b)(1) and Rule 23(b)(2) actions are not provided an opportunity by the rule to exclude themselves from the action as is true in Rule 23(b)(3) actions. Because they do not have the alternative of bringing a separate suit, notice really serves only to allow those members the opportunity to decide if they want to intervene or to monitor the representation of their rights. As a safety valve, the court is given discretion by Rule 23(d)(2) to direct notice to be given in any class action for the protection of the members of the class or otherwise for the fair conduct of the action—a power that is inherent in the court at least in situations having due process overtones." (7A Wright and Miller, Federal Practice and Procedure: Civil § 1786 (1972).)

In the same vein the Advisory Committee Comments state "In the degree that there is cohesiveness or unity in the class and the representation is effective, the need for notice * * * will tend toward a minimum." 39 F.R.D. 106 (1966).

Clearly adopting this reasoning, and in many cases quoting the above passage from Wright and Miller, the Federal courts have overwhelmingly upheld the notion that due process does not require a right to opt-out in (b)(1) and (b)(2) actions, and that absent "special circumstances" due process does not call for any form of notice in such cases. See, e.g., Katz v. Carte Blanche Corp. (3d Cir. 1974), 496 F.2d 747, cert. denied, 419 U.S. 885, 42 L. Ed. 2d 125, 95 S. Ct. 152 (1974); Yaffe v. Powers (1st Cir. 1972), 454 F.2d 1362; United States v. Allegheny-Ludlum Industries, Inc. (5th Cir. 1975), 517 F.2d 826; Wetzel v. Liberty Mutual Insurance Co. (3d Cir. 1975), 508 F.2d 239, cert. denied, 421 U.S. 1011, 44 L. Ed. 2d 679, 95 S. Ct. 2415, (1975); Frost v. Weinberger (2d Cir. 1975), 515 F.2d 57; Molina v. Weinberger (9th Cir. 1975), ___ F.2d ___. For more complete citation and discussion of this point see Larionoff v. United States (D.C. Cir. 1976), 533 F.2d 1167, 1184-86. And see also 3B Moore, Federal Practice § 23.55 (1977), 7A Wright and Miller, Federal Practice and Procedure § 1786 (1972), and 24 Clev. St. L. Rev. 504 (1975).

We find this cohesiveness to exist in the present class; the likelihood of special issues or defenses relating to certain members of the class is minimal. Reasoning from the premise that the remedy of reformation is available in Illinois only where there is a mutual mistake as to the terms of the writing or a unilateral mistake coupled with a fraud by the nonmistaken party, the defendants argue that proof of such grounds with respect to each class member will inevitably inject into the litigation

numerous individual issues of knowledge, intent, estoppel and reliance. While at first persuasive this logic is fatally flawed, for the grounds on which the plaintiff has actually sought reformation, whether or not sufficient to warrant such relief, simply are not likely to spawn individual factual or legal issues.

As to the allegations that the defendants' repurchase restrictions in themselves constitute an improper discrimination and the allegations concerning the favoring of corporate insiders, the absence of individual issues is quite clear. Upon consideration, we find the same to be true of the allegations of misrepresentation. The plaintiff does not claim that there was any mistake as to the terms of the written contract. This avoids what would necessarily amount to a quagmire of individual considerations. Also, the specific acts of misrepresentation alleged by the plaintiff do not require us to focus on the facts of any particular annuitants' situation. It is undisputed that all of the annuity contracts contained language expressly negating any right to a cash value on surrender. As to the letter denying the availability of a cash value option, the plaintiff alleges that it was the general and routine practice of the defendants to circulate such a letter among annuitants not qualifying under the repurchase restrictions. The defendants do not deny this. Further, it does not appear that under the applicable provisions of the New York Insurance Code it is necessary for the plaintiff to establish reliance by the class members upon the alleged misrepresentation. Finally on this point, we are not persuaded that the plaintiff is being permitted improperly to tailor her allegations so as to avoid raising individual issues at this stage, only to offer proof at trial of mistake and reliance. If this should later appear to be the case, the trial court would be free to take such corrective action as it saw fit.

While we are not, strictly speaking, concerned with the niceties of categorizing class actions under Rule 23, direct analogy to cases decided under Rule 23 helps confirm the notion that the present class is sufficiently cohesive so as to render notice unnecessary.

As regards the allegations that the repurchase restrictions in themselves constitute an improper discrimination, a clear and complete analogy can be drawn to those actions maintainable under subdivision (b)(2) of Rule 23. The defendants have allegedly acted improperly based on grounds generally applicable to the class so as to render appropriate final injunctive or declaratory relief. (Compare *Souza v. Scalone* (N.D.Cal. 1974), 64 F.R.D. 654.) Subdivision (b)(2) would be applicable regardless of the fact that the defendant's action has thus far directly affected only one or a few class members, so long as it would, being based on grounds common to the class members, affect other class members similarly. (See *Jones v. Diamond* (5th Cir. 1975), 519 F.2d 1090; *Davis v. Wier* (5th Cir.

1974), 497 F.2d 139.) Further, the fact that declaratory or injunctive relief of a final nature is not actually requested here does not destroy the analogy to subdivision (b)(2), since it is action by the defendant such as to render such relief *appropriate* and not the relief in fact requested that is the core of (b)(2) classification. (*Wetzel v. Liberty Mutual Life Insurance Co.; Pettway v. American Cast Iron Pipe Co.* (5th Cir. 1974), 494 F.2d 211.) This is especially true in view of the fact that the relief sought here is the practical equivalent of a declaration that certain provisions of the annuity contracts are unenforceable. In fact, given the grounds alleged by the plaintiff, the trial court might well see fit to afford declaratory relief rather than reformation of the contracts should the plaintiff establish her allegations.

As to the allegations of misrepresentation, analogy to the provisions of Rule 23 is somewhat more difficult. Plaintiff's theory here bears some resemblance to a case in which many individuals have allegedly been defrauded by the same or similar misrepresentations by the defendant. Such cases are normally classified under subdivision (b)(3). However, the present case bears more of a resemblance to certain truth in lending actions, or actions brought under Rule 10b-5 of the Securities Exchange Commission, in which liability to the class depends simply on proof of the nature of the defendant's conduct, such as whether information he supplied was in fact false or would be misleading to a reasonable man, and proof of his accompanying mental state. While Rule 23 generally forbids classification[20] of such cases under subdivision (b)(2), since the principal relief sought is almost invariably money damages, it has been recognized that insofar as the unity of issues involved these cases are of a (b)(1)-(b)(2) nature. Thus, in *Richardson v. Hamilton International Corp.* (E.D. Pa. 1974), 62 F.R.D. 413, the court certified under subdivision (b)(1) the plaintiff's request that a corporation merger be rescinded because of certain false and misleading information found in a proxy statement issued prior to that merger. Further, it is important here to note that where a class action might fall under either (b)(1)-(b)(2) or (b)(3) the Federal courts have uniformly held that it should be maintained under (b)(1) or (b)(2), rather than (b)(3), since to do so would be more consistent with the basic purposes of class actions and would avoid the difficulty and expense of pretrial notice. *Bing v. Roadway Exp. Inc.* (5th Cir. 1973), 485 F.2d 441; *Wetzel v. Liberty Mutual Life Insurance Co.*; 3b Moore, Federal Practice § 23.31[3] (1977); 7A Wright and Miller, Federal Practice and Procedure: Civil § 1775 (1972).

The defendants argue, however, that due process as interpreted by

---

[20] The Advisory Committee's Comments pertaining to Rule 23(b)(2) expressly provide that the subdivision is inapplicable where the appropriate final relief is "exclusively or predominately" monetary damages. 39 F.R.D. 102 (1966).

*Mullane* requires notice to the absent members of the present class. In this they seek to rely upon *Mullane* for the proposition that some form of notice is required in *all* class actions. As we have stated, this view has been soundly rejected. Beyond this, *Mullane* is often relied upon for the general proposition that whenever there is to be an adjudication of rights to "property", including monetary damages, whether in a class action or otherwise, some form of individual notice is needed as a matter of due process. The Advisory Committee's Comments to Rule 23 give some recognition to this notion by cautioning that where the appropriate final relief in an action is "exclusively or predominantly" monetary damages, subdivision (b)(2) is inapplicable. 39 F.R.D. 102·(1966).

While there is normally a harmonious relationship between the "cohesiveness" and "property rights" rationales, since where the major focus of an action is on property or money damage rights the class will generally tend to be less cohesive, these rationales in some cases come into conflict. This is true where, as here, despite the cohesiveness of the class, property rights are clearly at stake. In such situations, the courts have had to clarify the relationship between the two chains of thought. Some courts have adhered rigidly to the "property rights" rationale, finding its dominance to be demanded by the constitutional holding of *Mullane*. (See, *e.g.*, *Watson v. Branch County Bank* (W.D. Mich. 1974), 380 F. Supp. 945; *Ellison v. Rock Hill Printing & Finishing Co.* (D.S.C. 1974), 64 F.R.D. 415.) The better-reasoned cases, however, have taken a much different approach. Apparently, they reason that since a true class action, unlike all other types of actions, including the representative action in *Mullane*, offers assurance that there will be adequate representation of the rights of absent parties, the significance of property implications in a class action, rather than being controlled by *Mullane*, should be determined solely in terms of their effect on the cohesiveness of the class. We find this approach to be most acceptable. As the court in *Molina v. Weinberger* said:

> "Contrary to the Secretary's suggestion that the distinction between (b)(2) actions having monetary repercussions and (b)(3) actions is one solely of form of relief sought and not one of substance, relevant authorities have oft stated that the need for notice in a (b)(2) class action is *de minimis* simply because of its fundamental differences from a (b)(3) suit. As the Advisory Committee in its Note accompanying the proposed revised, now adopted, Rule 23 implies, the strict (c)(2) notice requirement is inapposite to a (b)(2) class because (b)(2) classes will tend to be more cohesive and unified so that adequate representation reduces the need for notice. See 39 F.R.D. 106." ___ F.2d ___, ___

Thus, in Title VII employment discrimination actions seeking

declaratory or injunctive relief it has been repeatedly held that a claim on behalf of the class for backpay damages under the statute can be joined without destroying (b)(2) status or requiring pretrial notice. (See, *e.g.*, *Johnson v. Goodyear Tire & Rubber Co.* (5th Cir. 1974), 491 F.2d 1364; *Robinson v. Lorillard Corp.* (4th Cir. 1971), 444 F.2d 791; *Bowe v. Colgate-Palmolive Co.* (7th Cir. 1969), 416 F. 711.) Even where the request for broad equitable relief has become unnecessary due to a change in the defendant's policies after the class action was filed, leaving only a claim for damages, notice has not been required. (*Wetzel v. Liberty Mutual Insurance Co.; Arkansas Educational Association v. Board of Education* (8th Cir. 1971), 446 F.2d 763.) And this same general approach has been applied in cases where in connection with a claim for injunctive or declaratory relief based on allegations that a class has been improperly denied pension or welfare benefits, monetary compensation for benefits already denied has also been sought. See *Bermudez v. United States Department of Agriculture* (D.C. Cir. 1973), 490 F.2d 718, *cert. denied sub nom. Butz v. Bermudez* (1973), 414 U.S. 1104, 38 L. Ed. 2d 559, 94 S. Ct. 737; *Rhodes v. Weinberger* (E.D. Pa. 1975), 66 F.R.D. 601; *Muzquiz v. City of San Antonio* (W.D. Tex. 1974), 378 F. Supp. 949; *Souza v. Scalone* (N.D. Cal. 1974), 64 F.R.D. 654, and see generally on this topic 3B Moore, Federal Practice par. 23.40 (1977).

■■ The logic of all these holdings has been that the monetary claim does not destroy the cohesiveness of the class, because liability for money "damages", in the form of back pay or benefits improperly denied, would arise directly out of the proof of allegations not dependent on the unique situations of individual class members (*i.e.*, proof of the existence of a pattern of unfair discrimination such as to warrant declaratory or injunctive relief). Following this logic, we find that the fact that the present case will in reality be a determination of the property rights of class members as well as a resolution of certain issues of statutory interpretation does not indicate the need for pretrial notice as a matter of due process, because the class is nonetheless cohesive. In fact, this result in the present case follows *a fortiori* from the pension and welfare cases, since in those cases there would clearly have been a determination of rights in specific, existing property even in the absence of any claim for monetary relief. Compare *Insley v. Joyce* (N.D. Ill. 1972), 330 F. Supp. 1228.

Lastly, we note that in the cases finding notice to be generally unnecessary in (b)(1) and (b)(2) actions the courts usually add the caveat that notice may be required if "special circumstances" are present. The language of *Molina v. Weinberger* is again typical:

"We are of the opinion that the better reasoned view counsels

against requiring, under due process principles, notice in every (b)(2) action. Only when the purposes in providing class members an opportunity to signify whether representation by named plaintiff's is fair and adequate or to intervene to present additional claims or to otherwise come into the action to, for example, submit views as *amici curiae*, are in need of being served, does due process require the direction of some sort of notice to absent members of a (b)(2) class." ___ F.2d ___, ___

Quite clearly, these considerations focus on the use of notice as a means of assuring the adequacy of plaintiff's representation of the class, rather than as a requirement of due process in addition to adequate representation. Hence, in the context of deciding the issue as it is before us, they are inappropriate. This case, unlike the Federal cases cited, is a special interlocutory appeal, taken solely for the purpose of deciding the need for notice. We feel that out of fairness to the parties in light of our express refusal to reconsider the separate issue of the propriety of the class, we should not reopen that issue even as it might in some small way unavoidably overlap with the notice issue.

We conclude, then, that in the present case due process does not require notice to absent members of the plaintiff class.

The order of the Circuit Court of Cook County requiring that the named plaintiff notify absent class members of this pending litigation is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GOLDBERG, P. J., and O'CONNOR, J., concur.