(No. 49555.—

MINNIE FRANK, Appellee, v. TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA *et al.*, Appellants.

*Opinion filed May 26, 1978.*

WARD, C.J., and KLUCZYNSKI, J., took no part.

Bernard E. Epton, Lawrence A. Berman, Morris I. Liebman, Newton N. Minow, Henry L. Mason III, and Kirk B. Johnson, of Chicago (Epton & Druth, Ltd., and Sidley & Austin, of counsel), for appellants.

Robert J. Peters, Arnold I. Shure, Anthony Hume, and Gerald White, of Chicago, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This is a class action suit seeking reformation of approximately 400,000 retirement-annuity contracts to include a cash-surrender provision. The circuit court of Cook County ordered, *inter alia,* that plaintiff give individual notice of the pendency of this action to all identifiable class members based on that court's opinion

that due process requirements necessitated such notice. The trial court additionally found its order requiring notice involved a substantial ground for difference of opinion, and that an immediate appeal on that issue would materially advance the ultimate termination of the litigation. Accordingly, that court identified the following question for interlocutory appeal pursuant to our Rule 308 (58 Ill. 2d R. 308):

> "Whether due process of law under the 14th Amendment of the United States Constitution and Article 1, Section 2 of the Illinois Constitution, requires that Plaintiff in the case before this Court notify the absent members of the class of annuity contract holders whose contracts she seeks to have reformed of the pendency of this action."

The trial court's affirmative answer to this question was reversed by the appellate court, which found notice to be unnecessary under the circumstances. (47 Ill. App. 3d 821.) We allowed leave to appeal.

A full recitation of the facts and procedural history of this case is contained in the appellate court's opinion. We summarize here only those facts necessary to our conclusion. Defendants, Teachers Insurance and Annuity Association of America (TIAA) and its companion organization, College Retirement Equities Fund (CREF), are nonprofit, limited-liability life insurers providing a nationwide retirement plan for approximately 500,000 employees of educational institutions and nonprofit research organizations. The aggregate assets of these plans, including contributions from both employees and employers, are approximately $5 billion.

Dr. Minnie Frank, the named plaintiff in this class action, purchased retirement-annuity contracts from TIAA and CREF for which she made premium payments totaling $976.06 to TIAA and $976.06 to CREF. These payments were matched by her employer, Chicago Medical School. It

is clear from the TIAA and CREF contracts that it was not intended that the purchaser should have any right to surrender the contract for cash, and we do not understand plaintiff to dispute this.

Dr. Frank has not been employed by the Chicago Medical School or any other participating institution for several years, however, and, consequently, has not been a contributing member of the retirement plans during that period. In response to her inquiries concerning a cash-surrender value for her contracts, plaintiff learned from the companies of limited "annuity repurchase" options made available to those whose contracts had been in force 5 years or less or the repurchase values of which were $2,000 or less. Dr. Frank qualified under neither option. Thereafter, plaintiff's attorney husband, Marvin Lustgarten, filed this class action with his wife as the named plaintiff on behalf of the several hundred thousand persons holding contracts with the defendant insurance companies. It is alleged therein that this "secret" annuity-repurchase practice and an alleged practice of permitting certain institutional executives and other favored persons to surrender their contracts are discriminatory and violate the governing New York statutes. The complaint seeks reformation of the contracts of all class members so as to provide to them an otherwise unavailable full-cash-surrender option. Marvin Lustgarten later withdrew as counsel after the court suggested his presence might cause problems with the class action aspect of the case. See *Stull v. Pool* (S.D.N.Y. 1974), 63 F.R.D. 702; *Hamer v. Board of Education* (2d Dist. 1977), 52 Ill. App. 3d 531; *Barliant v. Houghton Mifflin Co.* (1st Dist. 1977), 45 Ill. App. 3d 494, and cases there cited.

The major thrust of defendants' argument is that reformation of these contracts would substantially alter the retirement scheme contracted for by the defendants with the individual class members. Therefore, urge defend-

ants, each individual class member is entitled to be notified of the pendency of this action in order that he may intelligently decide whether to participate in, oppose, or withdraw from this lawsuit. The no-cash-surrender concept is said by defendants to be a basic principle of the TIAA-CREF contracts. If 400,000 of these contracts are reformed, effectively offering all members the opportunity for cash surrender, it is urged that the validity of prior actuarial calculations will be impaired and the cost-benefit structure of the plan disrupted. It is argued that if the cash-surrender option were exercised by a significant number of contract holders, the resulting diminution in assets could jeopardize defendants' ability to meet their obligations to the remaining members. Plaintiff responds that these arguments cannot be considered, for the record contains no proof of their validity.

This case has not, of course, been heard on its merits, and we indicate no opinion thereon. It is obvious, however, to even the untrained mind that there are substantial differences between a retirement system in which no right, or only a rather narrowly limited right, to withdraw contributions exists, and a system, such as that sought by plaintiff, in which the contributors may withdraw their contributions on demand. Similarly, it seems to us entirely possible, if not probable, that other members may not share plaintiff's enthusiasm for an unlimited cash-surrender privilege, or may believe the remedy for discriminatory cash-surrender practices, if such practices exist, is to enjoin the companies from continuing them—to eliminate the practices completely rather than render them uniformly available.

These observations suggest serious questions regarding the adequacy of the representation which a plaintiff in the position of Dr. Frank offers to other members of the class who are still contributing participants or even annuitants in the retirement system, and whose interests and views

may differ from, or be opposed to, those of Dr. Frank. We do not, of course, now decide the issue of the adequacy of plaintiff's representation, for it is not now before us for that purpose. Rather, we simply observe that these questions persist despite the trial court's preliminary finding that plaintiff's representation is adequate. It may well be, if this case proceeds as a class action to a hearing on the merits, that evidence will be introduced establishing the conflict suggested by defendants. Should this occur, the trial judge may wish to reconsider, at least as to those members with conflicting interests, his earlier finding that plaintiff's representation was adequate. In that event the court may dismiss the class action or, depending on the proof, determine that plaintif can proceed as the representative of a smaller class composed of persons with more compatible interests. We do not mean to imply, however, that our holding as to the necessity of notice to all other contract holders would be vitiated by a reduction in the size of the class, should that occur.

Our purpose in mentioning this is to call to the attention of the trial courts the possibility of utilizing our Rule 308 as a means of reviewing and resolving the representational issue at an early stage of the proceedings as was done with the notice issue here. Where questions are raised as to adequacy of representation or the necessity of notice, and the trial judge believes evidence would be helpful in the resolution of those questions, we see no valid objection to requiring the parties to present such evidence before a finding and order are made on either question. And, if the trial court believes there to be "substantial ground for difference of opinion" (Rule 308) as to the correctness of his order, and that immediate appeal may materially advance ultimate disposition, an interlocutory appeal could then be sought. Since a named plaintiff, because of the cost, may not wish to prosecute the action if individual notice must be given to the

members of a large class or if it cannot be prosecuted as a class action, an early, authoritative determination of those issues would, in some cases, seem desirable. See Forde, *Class Actions in Illinois: Toward a More Attractive Forum For This Essential Remedy* (1977), 26 De Paul L. Rev. 211, 231-33.

In his order requiring notice the trial judge stated:

> "This Court is of the opinion that due process of law, as interpreted by the United States Supreme Court in *Eisen vs. Carlisle & Jacquelin*, 40 L. Ed. 2d 732, decided May 28, 1974, and in other cases, requires that Plaintiff, *in the circumstances before this Court,* inform the members of the class of contract holders she seeks to represent of the pendency of this action. Due process of law requires that these persons be given an opportunity to participate in or to withdraw from this lawsuit." (Emphasis added.)

It is clear to us from the emphasized language that in reaching its conclusion regarding notice the trial court considered factors in this case which the appellate court did not.

As earlier noted, in the trial and appellate courts and here, defendants presented arguments relating to the potential conflict of interest between Dr. Frank and other class members. Specifically, it was alleged that plaintiff was not a typical class member because, in contrast to most class members, she was not relying upon the TIAA-CREF contract for her retirement income, she had ceased active participation in the program, and her sole interest in this suit was to surrender her contract in exchange for a cash payment. Defendants argued that these factors were important in determining whether the trial court was justified in requiring notice to the absent class members, while plaintiff urged they concerned only the issue of adequacy of representation and were therefore inappropriate in this interlocutory appeal. The appellate court agreed with the plaintiff and specifically refused to

consider these factors in this appeal, which it regarded as limited to the notice issue. 47 Ill. App. 3d 821, 841.

In our judgment, the several aspects of class actions cannot be neatly compartmentalized and independently resolved. Questions relating to the adequacy of representation of the class by the named parties and their counsel, the necessity of notice to members of the class, and the determination of classes or subclasses, while viewed as separate considerations, all overlap to varying degrees. We believe the trial court's consideration of *all* of the circumstances of the case before it was appropriate in determining whether the additional protection of notice was required by due process, and that the appellate court erred in focusing solely upon the cohesiveness of the class in reversing the trial court's judgment.

Class action suits have long been recognized as exceptions to the general rule that absent parties may not be bound by a judgment *in personam*. (See, *e.g., Hansberry v. Lee* (1940), 311 U.S. 32, 40-41, 85 L. Ed. 22, 26-27, 61 S. Ct. 115, 117-18.) This exception is made possible by a requirement that the representative parties fairly and adequately protect the interest of the class. (Ill. Rev. Stat. 1977, ch. 110, par. 57.2(3); Fed. R. Civ. P. 23(a)(4) (1966); see also *Newberry Library v. Board of Education* (1944), 387 Ill. 85.) As we noted in *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 338: "Absentee class members must be so represented that their rights will receive adequate protection." The Supreme Court in *Hansberry* put it thus:

> "It is one thing to say that some members of a class may represent other members in a litigation where the sole and common interest of the class in the litigation is either to assert a common right or to challenge an asserted obligation. [Citations.] It is quite another to hold that all those who are free alternatively either to assert

rights or to challenge them are of a single class, so that any group merely because it is of the class so constituted, may be deemed adequately to represent any others of the class in litigating their interests in either alternative. Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires. The doctrine of representation of absent parties in a class suit has not hitherto been thought to go so far." (311 U.S. 32, 44-45, 85 L. Ed. 22, 28-29, 61 S. Ct. 115, 119-20.)

But adequate representation is not the sole touchstone of due process. There can be threshold findings of adequate representation with notice nevertheless required as a matter of due process to allow members of the class their constitutional opportunity to be heard. This is not to suggest, however, that notice can ever cure otherwise inadequate representation.

To the degree there is cohesiveness within the class, the need for notice to absent members will, of course, tend toward a minimum. But, if there exist questions as to the adequacy of representation, as here, or the propriety of adjudicating the dispute on a class action basis, notice may not only be appropriate, it may well be constitutionally required. (See *Schroeder v. City of New York* (1962), 371 U.S. 208, 9 L. Ed. 2d 255, 83 S. Ct. 279 (condemnation proceedings); *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (representative accounting action). *Cf. Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (class actions under Federal Rule of Civil Procedure 23(b)(3)).) In fact, the maintenance of a class action, as well as the determination of a class, may be

conditioned upon the additional requirement that notice be given. Ill. Rev. Stat. 1977, ch. 110, pars. 57.3, 57.4.

Much of the discussion during the litigation of this case has been devoted to the opinion of the United States Supreme Court in *Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140. In that case, the plaintiff brought suit against defendant brokerage firms attacking the practice of charging an additional fee for odd-lot transactions as violative of securities and antitrust laws. He sought relief on behalf of individuals who had traded odd lots during a specified period. The Supreme Court held that since the suit was a class action under Federal Rule of Civil Procedure 23(b)(3), individual notice to all reasonably identifiable class members was required. 417 U.S. 156, 174-78, 40 L. Ed. 2d 732, 746-49, 94 S. Ct. 2140, 2150-52.

While the courts, and also the parties here, differ as to whether the result in *Eisen* was predicated upon Federal Rule 23(c)(2) (Fed. R. Civ. P. 23(c)(2) (1966)), or based upon due process considerations, this court has recognized that although "notice to absent class members as it relates to due process was discussed in *Eisen,* that constitutional requirement was not the basis of the *Eisen* decision." (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 311.) But the frequent references to due process considerations in *Eisen,* as well as the comments of the advisory committee, indicate that Rules 23(b)(3) and 23(c)(2), regarded by the court as requiring notice, were thought to have stemmed from due process considerations. We also noted in *Wilcox,* however, that due process does not require individual notice to every member of the class in all circumstances. 61 Ill. 2d 303, 312. See also *Wetzel v. Liberty Mutual Insurance Co.* (3d Cir. 1975), 508 F.2d 239, 255-57, *cert. denied* (1975), 421 U.S. 1011, 44 L. Ed. 2d 679, 95 S. Ct. 2415.

We pause here to note that Illinois now has a recently enacted class action statute which became effective follow-

ing the judgment of the trial and appellate courts in this case. (Ill. Rev. Stat. 1977, ch. 110, par. 57.2 *et seq.*) In *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 337, we held that statute procedural in nature and therefore applicable to pending litigation. The statute includes a specific provision regarding notice:

"Sec. 57.4 Notice in class actions. Upon a determination that an action may be maintained as a class action, or at any time during the conduct of the action, the court in its discretion may order such notice that it deems necessary to protect the interests of the class and the parties.

An order entered under paragraph (a) of Section 57.3 determining that an action may be maintained as a class action, may be conditioned upon the giving of such notice as the court deems appropriate." (Ill. Rev. Stat. 1977, ch. 110, par. 57.4.)

The statute, of course, does not purport to define the circumstances requiring notice. Rather, it provides for discretionary notice in circumstances where the court considers notice desirable but not compelled by due process requirements.

Since *Steinberg* held the act applicable to pending litigation, this appeal could, conceivably, be resolved by simply holding that in requiring notice the trial judge did not abuse the discretion vested in him by the statute. The difficulty with that disposition is that, as earlier noted, the trial judge did not view his action as an exercise of discretion—in his opinion notice was constitutionally required by the circumstances of this case. Were we to disagree, remandment would be necessary to afford the trial court an opportunity to evaluate the notice issue in a discretionary context. Consequently, we have considered the issues in the context of due process requirements.

Since our concern here is with the constitutional rather than the statutory requirements, we do not regard as particularly helpful an analysis of the multitude of cases dealing with Rule 23 of the Federal Rules of Civil

Procedure governing class actions in the Federal courts. Due process considerations come into play, of course, because in class action litigation all members of the class are bound by the result. Where it is apparent that there may be differing interests among class members or differing opinions as to the desirability of the relief requested in the complaint, those persons who may object have a right to be notified of its pendency so that they may take such action as they deem appropriate to the protection of their interests.

In the case before us the individual members of the class and their addresses are readily identifiable from defendants' records. By her complaint, allegedly brought on behalf of several hundred thousand of the annuity-contract holders, Dr. Frank seeks to change the refund provisions of contracts providing what may well be the principal source of retirement income for many of those individuals. Because no proof has been heard, the potential ramifications of those changes cannot now be known with certainty. What is in our opinion certain is that given the potential conflict of interest between the named plaintiff and many others in the class, the possible adverse consequences to those others of the contract changes sought in this action, and the availability of their names and addresses, due process requirements as interpreted in *Eisen, Schroeder, Mullane* and *Hansberry* will tolerate no less than the individual notice ordered by the trial court.

Accordingly, the judgment of the appellate court is reversed, the order of the circuit court requiring notice to the absent class members is affirmed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion and our class action statute.

*Appellate court reversed; circuit court affirmed; cause remanded, with directions.*

WARD, C.J., and KLUCZYNSKI, J., took no part in the consideration or decision of this case.