ILLINOIS HOUSING DEVELOPMENT AUTHORITY, Plaintiff-Appellant, *v.* SJOSTROM & SONS, INC., *et al.*, Defendants-Appellees.

Second District    No. 81-686

Opinion filed March 30, 1982.

Alan S. Ganz, Margaret S. Garvey, and Stephen D. Sharp, all of Rooks, Pitts, Fullagar and Poust, of Chicago, and J. F. Heckinger, of Berry, Berry & Heckinger, of Rockford, for appellant.

Greenwald, Maier & Newton, of Rockford, for appellee Sjostrom & Sons, Inc.

Barrick, Jackson, Switzer, Long & Balsley, of Rockford, for appellee Knowland, Smith & Tyson, Inc.

Jay S. Judge and Charles C. Hoppe, Jr., both of Judge, Drew, Cipolla & Kurnik, of Park Ridge, for appellee Bert M. Lafferty Company.

McDermott, Will & Emery, of Chicago, and O'Brien, Healy, Wade & Gorman, of Rockford, for appellee Orput Associates, Inc.

J. Todd Kennedy, of Reno, Zahm, Folgate, Lindberg & Powell, and Harold L. Turner, of Turner and Shoemaker, both of Rockford, for appellee Mid-States Construction, Inc.

Connolly, Oliver, Goddard, Coplan & Close, of Rockford, for appellee Finestone Corporation.

Robert A. Calgaro and Dale F. Conde, both of Pedderson, Menzimer, Conde, Stoner & Killoren, of Rockford, for appellee Valley View Apartments, Ltd.

JUSTICE VAN DEUSEN delivered the opinion of the court:

The plaintiff appeals from the dismissal of its 13-count complaint

pursuant to section 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(i)).

In 1973, the defendant Valley View Apartments, Ltd. (Valley View), initiated an application for funding of a housing development in Rockford. Valley View sought the funding in order to construct a 13-floor residential building which was to contain 179 units of housing for the elderly. Valley View's application sought funding from the plaintiff, the Illinois Housing Development Authority (IHDA). Shortly after funding was received, Valley View, as beneficial owner of the proposed development, entered into contracts with several of the defendants. These contracts were for construction and architectural services for the development.

The development was built and occupied by July of 1975. Shortly after the project was occupied, a water leakage problem developed. Over 85% of the units experienced water leakage. Apparently rain was able to penetrate the exterior stucco panels and seep in the apartments. The seepage problem was causing substantial interior and exterior damage. A final disbursement of funds from the mortgagee, the IHDA, was obtained on April 16, 1976.

On March 17, 1980, the IHDA filed a 12-count complaint naming as defendants the development's general contractor, Sjostrom & Sons (Sjostrom); the preconstruction architect, Orput Associates, Inc. (Orput); the supervising architects, Knowland, Smith & Tyson, Inc. (Knowland); the beneficial owner, Valley View; the fabricator of the exterior stucco panels, Mid-States Construction, Inc. (Mid-States); and Mid-States' supplier of materials and specifications, Finestone Corporation (Finestone).

In the complaint, the IHDA alleges that during the construction of the building, the defendants breached the provisions of the contracts which assured quality workmanship, and/or they negligently designed, installed or constructed the exterior stucco panels. The plaintiff sought monetary damages for the cost of repairing the water leakage problem and for impairment of their security interest.

On July 2, 1980, Valley View filed a counterclaim against four of the named defendants: Finestone, Mid-States, Sjostrom, and Knowland. They did not file a claim against Orput. Various parties then filed cross-claims. For over a year the parties took discovery. Numerous depositions were taken and numerous interrogatories were served.

On February 27, 1981, plaintiff filed a second amended complaint adding an additional negligence count and two defendants: Bert M. Lafferty Co. (Lafferty), the caulking subcontractor, and Harry Vernetti, the sole proprietor of Mid-States.

The 13-count, second amended complaint can be summarized as follows:

| | Defendant(s) | Theory of Recovery |
|---|---|---|
| Count I | Sjostrom | breach of contract, brought as third-party beneficiary of contract with owner. |
| Count II | Sjostrom | breach of contract, brought as subrogee of contract with owner. |
| Count III | Sjostrom | negligent construction. |
| Count IV | Valley View & Orput | breach of surety pro- vision of Building Loan Agreement. |
| Count V | Orput | breach of contract, brought as third-party beneficiary of contract with owner. |
| Count VI | Orput | breach of contract, brought as subrogee to contract with owner. |
| Count VII | Orput | negligent design. |
| Count VIII | Knowland | breach of contract, brought as third-party beneficiary of contract with owner. |
| Count IX | Knowland | breach of contract, brought as subrogee to contract with owner. |
| Count X | Knowland | negligent supervision of construction. |
| Count XI | Vernetti d/b/a Mid-States | negligent manufacturing and design of stucco panels. |
| Count XII | Finestone | negligent manufacturing of materials used to make the stucco panels. |
| Count XIII | Lafferty | negligent caulking of the structure. |

On June 25, 1981, the case was transferred from Judge Layng to Judge Smith. On July 16, 1981, all of the defendants, except Valley View, filed a joint motion to dismiss all counts, except count IV, on the ground that the plaintiff lacked standing. On August 14, 1981, after a hearing, the trial court granted the joint motion to dismiss. All counts, except count IV,

were dismissed. In granting the joint motion, the trial court stated that because the owner was not in default in its mortgage payments and because the owner had counterclaimed requesting the same relief as plaintiff requested, the plaintiff, the IHDA, as a mortgagee, had no standing to bring the suit against any of the defendants other than the mortgagor.

On July 16, 1981, Valley View and Orput filed a motion to dismiss count IV, which alleged that Orput and Valley View breached the building loan agreement with the IHDA. On September 4, 1981, the court granted Orput's and Valley View's separate motions to dismiss. Count IV was dismissed on the ground that the building loan agreement between the mortgagor, Orput and the mortgagee was fully performed.

From these dismissals, the plaintiff appeals. On appeal, the plaintiff asserts that the trial court made several procedural errors in considering the two motions, and that the trial court erred in that each of the 13 counts of the complaint does state a cause of action.

We first consider the alleged procedural errors. The IHDA contends that the motions to dismiss should have been denied because they were not brought pursuant to the proper section of the Civil Practice Act.

Both motions to dismiss stated that they were brought pursuant to section 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(i)). Section 48(1)(i) states that a defendant may, within the time for pleadings, file a motion for dismissal of the action on the ground that "the claim or demand asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim or demand." Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(i).

An "affirmative matter" under this section is "something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 96; see *In re Marriage of Musa* (1982), 103 Ill. App. 3d 189, 191-92. ■■ In *Hermes v. Wm. F. Meyer Co.* (1978), 65 Ill. App. 3d 745, 747, the court stated that a lack of standing may be a basis for dismissing a suit pursuant to section 48(1)(i). In so holding, this court stated that section 48(1)(i) is to be "broadly construed to encompass basic defenses to a claim." (65 Ill. App. 3d 745, 747.) In *Hermes*, the plaintiff, as an owner of 20% of the shares in a corporation, brought a suit against the corporation and other shareholders. The defendants filed a section 48 motion to dismiss, contending that plaintiff had divested himself of the shares and, therefore, lacked "legal capacity to sue." In *Hermes*, the alleged transfer of ownership of the shares of stock, was an "affirmative matter" which could be raised pursuant to section 48.

It can be argued that here there is no alleged "affirmative matter" which avoids the effect of the claim, rather the defendants' motions and the briefs in support of the motions contend only that plaintiff has failed to plead sufficient facts to establish that the IHDA has a sufficient interest in the development or the contracts to bring the suit. The defendants' motions further assert that the facts as pleaded fail to establish either a right to subrogation, or a breach of a duty owed by the defendants to the IHDA upon which a negligent claim could be based.

Under a very broad construction of the phrase "affirmative matter," these assertions raised in the defendants' motions to dismiss would be a proper subject for a section 48(1)(i) motion. Such a broad construction, however, would tend to infringe on the purposes of the section 45 motion. Section 45 motions, like the defendants' motions, assert primarily that the plaintiff failed to plead sufficient facts which would establish all the essential elements of the cause of action and would entitle plaintiff to recovery. *Newberg-Krug-Brighton v. State Toll Highway Authority* (1978), 63 Ill. App. 3d 780.

■■ From the motions and from the order entered by the trial court, it appears that the motions would have been proper if brought pursuant to section 45 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 45.) Even if the motions should have been labeled as section 45 motions to dismiss, designating a motion pursuant to the wrong section of the Civil Practice Act is not fatal. In *Weber v. Weber* (1979), 77 Ill. App. 3d 383, 385, the court held that even if a motion is labeled a section 48 motion, a reviewing court may treat the motion as one brought pursuant to section 45 if the legal theory of the motion is consonant with a section 45 motion.

The IHDA next contends that the trial court committed error in considering and granting the joint motion to dismiss, because the motion was not timely filed. Plaintiff asserts that because section 48 states that a defendant may file such a motion "within the time for pleading," and because defendants have already answered, the section 48 motion was untimely. It should be noted, however, that section 45 does not contain any specific language concerning timeliness, and neither section sets a specific, absolute limitation on the time within which a motion to dismiss can be filed.

■■ There is very little case law concerning the time period in which motions to dismiss can be filed. In *Greenlee Brothers & Co. v. Rockford Chair & Furniture Co.* (1969), 107 Ill. App. 2d 326, 332-33, however, this court did state that the trial court has discretion to permit the filings of tardy pleadings, and unless plaintiff can show that it was prejudiced by the late filing there is no abuse of discretion. See also *Silberstein v. Joos* (1978), 59 Ill. App. 3d 293; *McGrath Heating & Air Conditioning Co. v. Gustafson* (1976), 38 Ill. App. 3d 465.

■■ Because this court can view the joint motion to dismiss as a section 45 motion, because section 45 does not refer to a time period in which such motions must be brought, and because plaintiff has failed to establish that it has been prejudiced by the late filing of the joint motion, the trial court did not abuse its discretion in ruling on the joint motion to dismiss, notwithstanding the fact that several of the moving defendants had previously filed answers to the complaint.

■■ The plaintiff also asserts that the successful joint motion of Mid-States, Knowland, Sjostrom, Orput and Finestone was barred because, earlier in the proceedings, these defendants had filed similar motions before another judge, and these motions had been denied. In *Miller v. Schultz* (1977), 53 Ill. App. 3d 721, 723, the appellate court was faced with the same contention. There the court stated that even though one judge on a previous occasion has held a pleading to be sufficient, another judge may subsequently set aside that ruling if he deems that it was erroneous. This contention is without merit.

In dismissing all of the counts of the complaint, except count IV, the trial court found that the plaintiff did not have standing to bring suit against any of the defendants other than the mortgagor. The IHDA contends that it has three bases for standing: (1) that in counts I, V, and VIII, the IHDA has standing as third-party beneficiary of three of the contracts, (2) that in counts II, VI and IX, the IHDA has standing in that it is subrogated to the rights of the owner in the same three contracts, and (3) that in counts III, VII, X, XI, XII and XIII, the IHDA, as a mortgagee, may maintain an action for negligence.

In counts I, V, and VIII, the IHDA claims the status of a third-party beneficiary to three contracts: the construction contract between the owner and Sjostrom; the supervising architect contract between the owner and Knowland; and the architect's agreement between the owner and Orput.

■■ The IHDA contends that, as a third-party beneficiary, it can enforce the contracts even though it is not a party to the three contracts. The right of a person not a party to a contract to enforce the contract was discussed in *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252. In *Carson* the court stated that if a contract is entered into "for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract." (346 Ill. 252, 257.) It is not enough that the beneficiary is an incidental beneficiary; only a direct beneficiary has a right against a promisor or promisee. *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 385.

■■ Each case must depend upon the intention of the parties and that

intention is to be gleaned from a consideration of all of the contract provisions and the circumstances surrounding the parties at the time of its execution. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 258.) The liability of the promisor to the third party must affirmatively appear in the language of the contract; furthermore, the liability arising from the contract language cannot be extended or enlarged on the sole ground that the situation and circumstances of the parties justify or demand further or other liability. 346 Ill. 252, 258; see also *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 54-55; *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 385.

The IHDA relies primarily on the case of *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, to support its contention that it is a third-party beneficiary entitled to enforce the provisions in which the defendants promise the owner that the work done under the contract will be done in a professional, workmanlike manner.

In *Resnik*, the Illinois Building Authority (IBA) contracted with the defendant architects, Curtis & Davis, for services relating to the construction of the Vienna Correctional Center. The center was to be leased and used by the State; the IBA was not a State's agency. The State nonetheless brought suit against Curtis & Davis for breach of its architectural contract with the IBA. The circuit court dismissed the complaint holding that the State was not a proper party to bring the suit. The appellate court reversed. In affirming the appellate court, the Illinois Supreme Court held that under the language of the contract, the State was a direct third-party beneficiary to the contract between the IBA and Curtis & Davis.

In the present case, the IHDA contends that, like the contract in *Resnik*, all three contracts here contain sufficient language to indicate that the IHDA is an intended, direct beneficiary of the contract. The provisions upon which the IHDA relies are set out or summarized below.

1. The construction contract between the owner and Sjostrom. The contract language does seem to create some contract rights for the IHDA (Authority). Paragraph 3 of contract document 2 states:

> "Authority has the right to monitor the Work at all times independent of the Parties' right to do so. In this connection, Authority shall be given full and complete access to the Work. Authority, may, in its sole discretion, if it believes that the Work is not being done in accordance with the Contract exercise all of the rights given the Owner hereunder to the exclusion of the Owner. In addition, Authority may take such other action as it deems reasonable to protect its interests."

Paragraph 6 of the same document states:

> "Parties acknowledge that there is no privity of contract be-

tween Authority and themselves arising out of the Contract. Parties further acknowledge that because Authority is or has granted a mortgage to Owner that it has an interest in the Contract and is given rights hereunder to protect its interests."

Paragraph 9 states:

"Any orders for extra work, or changes by way of altering or adding to the Work may be effected by the Contractor only by giving the Architect, Owner and Authority prior written notice thereof and securing prior written authorization by way of a change order from the Owner and Authority."

In paragraph 10, the contractor, Sjostrom, warranted to the owner and the Authority that its statement of financial resources was correct. Sjostrom also agreed to use a method of accounting approved by the Authority and to keep its books and records available to the Authority for inspection.

Paragraph 11 gave the Authority the right to object to a subcontractor, to approve or disapprove subcontracting agreements, and to examine the books and records of subcontractors.

Paragraph 14 gave the Authority control over, and rights in, both the contractor's and subcontractors' insurance or bonds:

"The insurance and Bonds, as approved by Authority, shall remain in effect until the Authority issues its Completion Certificate."

Paragraph 15 entitled the Authority to a copy of the contractor's work schedule to be used as basis for payment authorizations.

Paragraph 16 gave the IHDA a certain amount of control over payment applications and authorizations.

Paragraph 27 states:

"The Contractor shall pay to the Owner or Authority as the case may be, any and all costs, expenses and attorneys' fees which the Owner or Authority may suffer, incur or become liable for by reason of the Owner or Authority enforcing, or attempting to enforce the terms and provisions of the Contract, whether or not such costs, expenses and fees are related to direct action against the Contractor."

Under paragraph 30, the contractor agreed to provide the Authority with a field office on the site of the construction. The contract was signed by the parties and by a representative of the IHDA.

2. The supervising architect's agreement between Knowland and the owner.

In this contract the owner and Knowland entered into an agreement to provide architectural supervision of the construction development. This contract also gave the IHDA the right to have most phases of the work submitted to it for approval. Knowland was also required to make

regular reports to the IHDA and the owner, and to attend meetings upon request of the IHDA. The work product became the property of the IHDA and the owner.

Paragraph 13 specifically provides:

> "Architect shall maintain a professional liability insurance policy insuring Owner and Authority for Architect's errors, omissions or negligence in connection with the Work with a company and limits, and in a form acceptable to Authority."

Finally, under paragraphs 4 and 5, the IHDA had the right, under certain circumstances, to terminate the contract. Once again the agreement was signed by the owner, Knowland and a representative of the IHDA.

3. The preconstruction architect's contract between Orput and the owner.

Through this contract, the owner and Orput entered into an agreement to provide architectural and engineering services for the preconstruction period. The preamble to the contract recognized that the IHDA was to be the mortgagee. Several of the provisions gave the IHDA the right to examine and approve the work prepared by Orput. The IHDA could also request Orput's attendance at a conference.

Under paragraph 6 of this agreement, the architect's services and plans were to become the property of the owner and the IHDA. Under paragraph 13, Knowland agreed to the following obligation:

> "Architect shall maintain a professional liability insurance policy insuring Authority for Architect's errors, omissions or negligence in connection with the Work with a company and limits, and in a form acceptable to Authority.
>
> The obtaining of the foregoing insurance shall not relieve Architect of any obligations or liabilities he might otherwise have to Owner and Authority."

This contract was also signed by the parties and by a representative of the IHDA.

The IHDA contends that these provisions of the three contracts are sufficiently similar to the contract provisions in *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, and, therefore, the IHDA is also a direct, third-party beneficiary to the contracts.

In discussing the State's status as a third-party beneficiary, the *Resnik* court initially noted that the preamble to the IBA's contract with Curtis & Davis stated that the owner, the IBA, " 'for the use of the Department of Public Safety, State of Illinois, hereinafter "user", intends to construct buildings and facilities for the completion of the Illinois State Penitentiary, located at Vienna. * * *' " (78 Ill. 2d 381, 385-86.) Among other

references to the "user," the term of the contract provided that (1) Curtis & Davis must ascertain the requirements of the project from both the IBA and the State, (2) that Curtis & Davis must revise drawings, specifications and estimates in a manner satisfactory to the IBA and the State, (3) that Curtis & Davis warranted that it was free to and had the authority to perform the agreement and to grant rights to IBA and the State, (4) that Curtis & Davis was to indemnify IBA and the State. The court further noted that the IBA, Curtis & Davis and a representative of the user (the State) signed the contract in question.

The court used these illustrations of contract language to support its conclusion that the disputed contract, specifically and in its entirety, convincingly displayed the intent of the parties, certainly the intent of the IBA, to make the State more than an incidental beneficiary, or a mere tenant. The court then went on to note that the surrounding circumstances show that the State was intended to be a direct beneficiary of the contract: Construction of the prison would directly benefit the State, not the parties, and the State, not the IBA, had the expertise necessary for the construction of the prison.

■■ Although many provisions in the *Resnik* contract and the contracts at bar are similar, there is a significant difference in the role of the State in the *Resnik* contract and the role of the IHDA in the instant contracts. Under the *Resnik* contract, the party asserting third-party beneficiary status was to be the ultimate user of the structure. Here no such status exists. The IHDA is no more than a regulatory authority and a mortgagee.

A reading of the contracts in question indicates that as a mortgagee the IHDA was granted certain rights to supervise and to control specific aspects of the planning and construction of the development. The contract provisions which gave the IHDA these rights were apparently designed to insure that the development would be well built at the lowest possible cost, and that the opportunity for fraudulent business dealings and for the exercise of poor business judgment would be kept to a minimum. However, most, if not all, of these rights granted to the IHDA were to be exercised before and/or during the performance of the contract. Moreover, these rights are unrelated to the provisions which the IHDA presently asserts as breached.

The IHDA, nonetheless, concludes that because of its unique statutory role, the thin capitalization of the project and these other rights granted under the contract, they should be deemed a direct, third-party beneficiary to all of the provisions. However, under *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 258, the liability affirmatively arising from the contract language cannot be extended or enlarged on the sole ground that the situation and the circumstances demand further or other liability.

Here, unlike *Resnik*, the development is not being constructed to directly benefit the IHDA. The beneficial owner, Valley View, is the user; the IHDA is merely a mortgagee. In its entirety the contract directly benefits only the parties, and the contract provisions which the IHDA seeks to enforce only incidently and collaterally benefit the IHDA, as a mortgagee. (See *Redarowicz v. Ohlendorf* (1981), 95 Ill. App. 3d 444, 447, *appeal allowed* (1981), 85 Ill. 2d 575.) The trial court properly dismissed counts I, V, and VIII of the complaint.

■■ With reference to counts II, VI and IX of the complaint, the IHDA contends that its "great involvement" in the three contracts entitles it to be subrogated to the contract rights of the owner. Under the doctrine of subrogation, a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful acts of another will be given the rights of the injured person against a wrongdoer. (*Dworak v. Tempel* (1959), 17 Ill. 2d 181, 190. See also *Village of Crainville v. Argonaut Insurance Co.* (1980), 81 Ill. 2d 399.) The alleged "great involvement" in the three contracts, without a payment of the claimed injury, is insufficient to allow the IHDA to be subrogated to the rights of the owner. In none of these counts does the IHDA allege that under a legal obligation it has paid for the loss or injury incurred by the owner as a result of the defendants' negligence or wrongful acts, nor does the IHDA allege that it has paid the claim of Valley View. The IHDA has not stated a cause of action against any defendant on the theory of subrogation. Even in the case cited by the IHDA, *National Cash Register Co. v. Unarco Industries, Inc.* (7th Cir. 1974), 490 F.2d 285, the court noted that the plaintiff had satisfied the outstanding debt prior to instituting the subrogation suit. The trial court did not err in dismissing counts II, VI and IX of the complaint.

Counts III, VII, X, XI, XII and XIII of the complaint allege that the defendants, Sjostrom, Orput, Knowland, Mid-States, Finestone and Lafferty respectively were negligent in designing and/or constructing the apartment building and/or the stucco panels.

■■ For a defendant to be liable for the tort of negligence, he must have had a duty towards plaintiff, defendant must have breached that duty, the breach must have been the proximate cause of the plaintiff's injury and there must be a resulting compensable injury. *Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 669.

The defendants contend that the plaintiff has failed to allege sufficient facts to indicate that plaintiff has been injured by the defendant's alleged negligence and that the failure to allege such injury and resultant damage deprives the plaintiff of standing to sue. (*Lynch v. Devine* (1977), 45 Ill. App. 3d 743.) In *Lynch*, the court stated:

> "The doctrine of standing, simply stated, requires that a party seeking relief from the courts must allege some injury in fact to

some substantive, legally-protected interest of his, which is a right or interest either recognized by common law or created by statute. [Citation.] The doctrine is used to insure that the courts are available to decide actual, specific controversies between the parties and are not overwhelmed in the mire of abstract questions, moot issues, or cases brought on behalf of other parties who do not desire judicial aid. [Citation.]" 45 Ill. App. 3d 743, 747-48.

To enable one to maintain an action to enforce private rights, he must show that he has sustained some injury to his personal or property rights, and he must show that he will be benefited by the relief granted. (59 Am. Jur.2d *Parties* §26 (1971).) Here, the plaintiff alleges that due to the defendants' negligence the IHDA has been injured in that the "IHDA will incur cost for repairs, the development has experienced general and severe deterioration causing a substantial impairment of IHDA's security interest and a frustration of IHDA's statutory purpose as mandated by the Illinois General Assembly."

Initially, it should be noted that the IHDA has failed to plead facts which would indicate that they will, in fact, incur the cost of the repairs. The facts as pleaded tend to indicate tht the Valley View partnership, as beneficial owner of the development, has the obligation to repair and will actually incur the cost of repairing the damage and deterioration. Plaintiff's conclusory allegations that it will incur the costs of repairs is not supported by the facts as pleaded and, therefore, may be disregarded. *Kuch & Watson, Inc. v. Woodman* (1975), 29 Ill. App. 3d 638, 641.

As a second injury, the IHDA asserts that due to defendants' negligence the building has experienced severe deterioration which has caused a substantial impairment of its security interest. The defendants contend that impairment of a security interest is not an actual present injury, and that, at best, it is an allegation of possible future injury. Defendants contend that "possible future damages are not compensable unless they are reasonably certain to occur." (*Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 827.) In *Citizens National Bank v. Joseph Kesl & Sons Co.* (1941), 378 Ill. 428, however, the court upheld an award of damages to a mortgagee for an impairment of its security interest. In that case, however, the bank had already foreclosed and was in possession of the secured property. Here, the plaintiff has not foreclosed, and is not in possession of the premises.

■■ Furthermore, here the owner of the property has filed suit against most of the defendants named by the plaintiff. Those not joined by the owner are named as defendants in counterclaims filed by other counter-defendants. If the owner is successful in its suit, the owner will have sufficient funds to make the needed repairs. Under the statutory authority and contractual rights given to the IHDA, the IHDA can compel the

owner to repair the deterioration. If the deterioration is repaired, the IHDA's security interest has not been impaired. Under the facts in this case, the alleged impairment of the plaintiff's security interest is only a possible future injury which is not reasonably certain to occur. As such, it is not a compensable injury. *Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 827.

The defendants also assert that plaintiff has failed to allege facts which would indicate that the defendants owed a duty to the IHDA. In Illinois, it is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 208; *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 97.

In a recent case, the fourth district appellate court held that a contractor owes no duty under a negligence theory to a subsequent purchaser of a home. (*Redarowicz v. Ohlendorf* (1981), 95 Ill. App. 3d 444, *appeal allowed* (1981), 85 Ill. 2d 575.) In *Redarowicz*, the contractor completed the home in late 1975 or early 1976. Plaintiffs purchased the premises from the original owners in April of 1977. Shortly thereafter, the plaintiffs noticed defects in the construction. Plaintiffs repaired the defects and then brought suit against the contractor. In upholding the trial court's dismissal of the plaintiff's negligence counts the court stated that "[p]laintiff's effort in [the negligence counts] is to counteract the traditional contract limitations on damages by converting the action into one of tort." (95 Ill. App. 3d 444, 447.) The dissent, citing *Rozny v. Marnul* (1969), 43 Ill. 2d 54, emphasized that the lack of direct contractual relationship between the parties is not a defense in a tort action.

In *Rozny* the court held that a lack of a contractual relationship between the parties is not a defense in a tort action; tort liability is to be measured by the scope of duty owed rather than the artificial concepts of privity. (*Rozny v. Marnul* (1969), 43 Ill. 2d 54, 62.) The question under *Rozny* is whether the relationship between the IHDA as a mortgagee and the defendants was such that a duty should be imposed. This question is one of law for the determination of the court. *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374.

The character of a defendant's duty was described in Prosser, Torts §53, at 324 (4th ed. 1971): "In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff * * *." The creation of a duty of care is based on many factors, one of which is reasonable foreseeability of the injury. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375.) Public policy and the social requirements are also factors to be considered. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 545.) Furthermore, the likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden

upon the defendant must be taken into account. *Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 907.

■■ Here, as to those defendants who were aware of the non-recourse, thin-capitalization mortgage on the development, it is reasonably foreseeable that negligent construction could injure the security interest of the mortgagee; however, foreseeability is not the only factor to be considered. Public policy, social considerations and the burden to be placed on the defendant should also be considered. (*Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 907.) In the present case, the injury allegedly suffered by the mortgagee was simultaneously suffered by the mortgagor. To allow both the IHDA and Valley View to sue on the same injury, subjects the defendant to the possibility of being doubly liable for only one injury. Moreover, allowing a direct action in this case would give every holder of a security interest a right to bring a suit against one who negligently injures the secured property and would thus unduly multiply and complicate litigation.

■■ We also note that the mortgagee has several other rights and remedies (*i.e.*, foreclosure, seeking possession, appointing a new manager answerable to the IHDA) that could be pursued to protect its security interest. These remedies would not subject the defendants to the possibility of double liability. The trial court's dismissal of the negligence counts was proper.

Finally, the IHDA contends that the trial court erred in dismissing count IV of the complaint. In count IV, the IHDA alleges that in connection with the execution of the building loan agreement between the IHDA and the land trustee of the development, Orput and Valley View executed a surety agreement. This agreement states as follows:

> "We the undersigned as sureties in consideration of IHDA making a commitment for a mortgage loan to Central National Bank & Trust Company of Rockford, as Trustee under Trust No. 720 and not individually, for Three Million Two Hundred Forty-Eight Thousand ($3,248,000.00) Dollars hereby agree jointly and severally to complete all the obligations of the Borrower under the foregoing Building Loan Agreement with the exception of repayment of the note secured by the first mortgage granted by the Illinois Housing Development Authority."

The IHDA alleges that one of the borrower's obligations under the building loan agreement was to "construct the Development, in accordance with the Construction Contract * * * between Borrower and Contractor, Sjostrom & Sons, Inc. * * *." The plaintiff further alleges that Sjostrom breached the construction contract with the borrower (1) by not complying with specifications that had been agreed upon by the parties, (2) by not constructing the building in a "workman-like manner," and (3) by not properly supervising subcontractors. The plaintiff asserts

that because Sjostrom breached its construction contract, the building was not constructed in accordance with that contract and, therefore, the surety contracts of Orput and Valley View with the IHDA were breached.

■■ The IHDA contends that the provisions in the building loan agreement in which the borrower agrees to construct the development in accordance with the construction contract amount to a guarantee of the work to be performed by Sjostrom. The plain meaning of the words in the contract, however, does not go that far, and it is the plain meaning of the words used in the contract that govern the interpretation of the contract. (*Donaldson v. Gordon* (1947), 397 Ill. 488.) The plain meaning of these provisions is that Valley View and Orput, as sureties, promised to construct the building in accordance with the construction contract in that they would sign the construction contract, would not enter into any conflicting agreement regarding the development, and would not alter or amend the construction contract without the IHDA's approval. Only a constrained interpretation of these contract provisions could turn them into a guarantee of the work to be performed by a third party. Here, the contract was drafted by the plaintiff, the IHDA, and, therefore, is to be strictly construed against the IHDA. *Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 333.

The building loan agreement does not contain a provision by which the borrower guarantees all work done under the construction contract. Since no such guarantee exists in the building loan agreement, neither Valley View nor Orput have assumed such an obligation under the surety agreements.

■■ The IHDA further asserts that paragraphs V and XII(i) of the building loan agreement expressly warranted that the development would be constructed in a good, workmanlike manner. Paragraph V states as follows:

> "No advance shall be due unless in the judgment of the lender all work usually done at the stage of construction attained when the advance is requested has been done in a good and workmanlike manner * * *."

Paragraph XII(i) provides:

> "The Borrower agrees not to do any act or thing prohibited by the terms of this agreement, and whenever and as often as any of the following events occur, any obligation on the Lender's part to make this Mortgage Loan or any advances hereunder shall cease if the Lender so elects, and the Note and Mortgage shall at the option of the Lender become immediately due and payable, but the Lender may make advances without becoming obligated to make any other or further advances:
> * * *

[i]f the Borrower does not erect and equip the Development in a good and workmanlike manner in accordance with the plans and specifications approved by all governmental authorities having jurisdiction and by the Lender; * * *."

From this language it is apparent that if, during construction, the development was not being constructed in a good workmanlike manner, the plaintiff had the right to rescind the contract. It did not constitute a warranty running to the IHDA. The trial court did not err in dismissing count IV of the complaint.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.