JOSEPH CARRAO *et al.*, Plaintiffs-Appellees, *v.* HEALTH CARE SER-
VICE CORPORATION d/b/a Blue Cross-Blue Shield Health Services,
Defendant-Appellant.

First District (5th Division)   No. 82—1030

Opinion filed September 23, 1983.

418

Karl F. Nygren, P.C., Donald J. Duffy, Howard J. Swibel, and G. Christian Kronberg, all of Chicago (Kirkland & Ellis, of counsel), for appellant.

William J. Harte, Ltd., Joyce & Kubasiak, P.C., Goldberg & Murphy, Ltd., Plotkin & Jacobs, Ltd., and Schwartzberg, Barnett & Cohen, all of Chicago (William J. Harte, John G. Jacobs, Edward T. Joyce, Benjamin Cohen, Jerome F. Goldberg, and Michael H. Moirano, of counsel), for appellees.

JUSTICE MEJDA delivered the opinion of the court:

Pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308), the circuit court entered an order finding that certain previous interlocutory orders involve questions of law as to which there is substantial ground for difference of opinion, and that an immediate appeal would materially advance the ultimate termination of the litigation. We granted defendant's application for leave to appeal to consider the following questions certified by the trial court:

"1. In the circumstances of this case, where the relevant health care benefits contracts do not explicitly state that the insurer will not pay claims for services that the insurer determines are 'not medically necessary,' do the plaintiffs state a claim for relief based upon the insurer's denial of claims on the basis of its determination that the health care was 'not medically necessary?'

2. In the circumstances of this case, does the question stated above present common questions of law or fact which predominate over individual questions, and do the parties designated by the Court as representative parties adequately represent the interests of the class in conformance with the requirements of Illinois Civil Practice Act, Section 57.2(a)(3)?

3. Is the Illinois Department of Insurance a necessary party to this action?"

The trial court's orders answered the first two questions in the affirmative and the last question in the negative. For the reasons which follow, we affirm the orders of the trial court.

Plaintiffs are beneficiaries of health insurance policies issued by the defendant, Health Care Services Corporation (hereinafter referred to as "Blue Cross") and health care providers who rendered care to persons insured by Blue Cross. This suit was brought as a class action

for damages, declaratory judgment, and injunctive relief. The gravamen of the consolidated complaint is that Blue Cross, in the absence of contractual or other legal authority, regularly refused to pay for medical and hospital care which Blue Cross independently determined was not medically necessary. Blue Cross moved under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 45, now codified without change of substance at Ill. Rev. Stat. 1981, ch. 110, par. 2—615) to dismiss the complaint on the ground that it was insufficient as a matter of law. Blue Cross also moved to join the Department of Insurance as a necessary party. On October 8, 1980, the trial court refused to dismiss three of the four counts of the consolidated complaint and ruled that the Department was not a necessary party. The trial court also determined that the cause could be tried as a class action and certified three sub-classes. As already indicated, the circuit court subsequently made the necessary findings to support an interlocutory appeal under Rule 308 and we granted the defendant's application for leave to appeal.

Opinion

The first issue presented for review is whether plaintiffs state a claim for relief by alleging that Blue Cross denied their insurance claims based on Blue Cross' independent determination that the health care rendered was not "medically necessary" despite the failure of the relevant contracts to state explicitly that this determination may be made by the insurer and that it could form the basis for the noncoverage. In deciding whether the trial court properly denied Blue Cross' motion to dismiss, we need only determine whether the consolidated complaint alleges facts sufficient to constitute a cause of action. See *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 253, 433 N.E.2d 1350.

Count I of the consolidated complaint alleged that various named plaintiffs were at all relevant times insured under group or nongroup contracts issued by Blue Cross and that they had regularly paid or caused to be paid premiums to the defendant in consideration of the insurance provided. Copies of the insurance agreements were attached to the complaint. The complaint further alleged that the terms and conditions of the contracts are substantially identical in all material respects and that none of the policies provides for independent review of a determination by an insured's physician as to when hospitalization is medically necessary or desirable, nor for denial of claims in the event that Blue Cross disagrees with the medical determination made by the insured's physician. The complaint also alleged that Blue

Cross has engaged in a pattern of refusing to pay its insureds' legitimate claims for the costs of health care for the stated reason that Blue Cross determined that such care was not medically necessary despite authorization of the care by the insureds' physicians. The complaint concluded that this practice constituted a breach of contract. Count I also alleged that the cause was brought as a class action because the large size of the class (over 1,000 members) makes joinder of all class members impracticable, that questions of fact and law common to the class predominate over questions affecting only individual members, and that the named plaintiffs will fairly and adequately protect the interest of the class.

Count II sought recovery for common law fraud and Count III sought recovery for violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, pars. 261 through 272). Count IV was stricken by the trial court. This appeal concerns only the sufficiency of count I.

Count I adequately alleges the existence of a valid contract and breach thereof (see generally *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634), and the defendant's brief does not actively dispute the sufficiency of these allegations.

■ Blue Cross contends, however, that the Non-Profit Health Care Service Plan Act (Ill. Rev. Stat. 1981, ch. 32, pars. 551 through 562i (hereinafter referred to as the Act)) under which Blue Cross is organized, authorizes it to review claims and deny those which it determines to be "medically unnecessary." Technically, this contention comprises "affirmative matter" which avoids the legal effect of the claim and therefore should have been raised by a motion under section 48(1)(i) of the Civil Practice Act. (Ill. Rev. Stat. 1981, ch. 110, par. 48(1)(i), now codified without change of substance as Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(9); see *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 252, 433 N.E.2d 1350.) A court of review may, however, treat an improperly designated motion to dismiss as though brought under the proper section (see 105 Ill. App. 3d 247, 253, 433 N.E.2d 1350), and we shall so treat the instant motion. Blue Cross relies on that part of section 5 of the Act which provides:

> "Sec. 5. Any corporation subject to the provisions of this Act may enter into contracts for the rendering of health care service to any of its subscribers and provide for payment for any such service.
>
> A health care service plan corporation shall impose no restrictions on the physician who treats a subscriber as to methods of

diagnosis or treatment \*\*\*. \*\*\*

The rates charges by such corporation to the subscriber for health care service shall, at all times, be subject to the approval of the Director of Insurance of the State of Illinois.

Rates to be charged to subscribers or subscriber groups shall be deemed unreasonable if the Director of Insurance finds that the health care service corporation has failed to make a *vigorous, good-faith effort to contain rates of reimbursement to hospitals and other participating health care providers* as well as to promote cost-effective alternative forms of health care." (Emphasis added.) (Ill. Rev. Stat., 1982 Supp., ch. 32, par. 555.)

While we agree with Blue Cross that one of the goals of the Act is health care cost control, we cannot agree that the cited portion of the Act mandates the particular, after-the-fact, form of cost control advocated by Blue Cross. The statute is couched in general terms and, contrary to Blue Cross' interpretation, does not purport to require any particular method of cost control.

Moreover, Blue Cross' argument relies on an isolated part of the statute taken out of context. " 'It is a cardinal rule of statutory construction that significance and effect should, if possible, without destroying the sense or effect of the law, be accorded every paragraph, sentence, phrase and word. [Citation.] A statute should be so construed, if possible, that no word, clause or sentence is rendered meaningless or superfluous. [Citations.]' (*People ex rel. Barrett v. Barrett* (1964), 31 Ill. 2d 360, 364-65.)" (*People v. Lutz* (1978), 73 Ill. 2d 204, 212, 383 N.E.2d 171.) The rest of section 5 of the Act states:

"All rates or basis of payments to health care providers made by [Corporations organized under the Act] pursuant to the contracts provided for above shall be approved prior to payment by the Director of Insurance.

The Director shall have the power to require immediate renegotiation of such rates or basis of payments whenever he determines that they provide for excessive payments or that they fail to include reasonable incentives for cost control, or that they otherwise substantially and unreasonably contribute to escalation of the costs of providing health care services to subscribers, or that they are otherwise inconsistent with the purposes of this Act." (Ill. Rev. Stat., 1982 Supp., ch. 32, par. 555.)

When read in context, the statutory language upon which Blue Cross relies does not appear to be intended as a limit on Blue Cross' obligation to pay claims arising from existing contracts, but rather limits

the rate base allowable by the Department of Insurance to payments made by Blue Cross for services which were "necessary or desirable." Blue Cross intimates as much in its brief, citing the Report and Recommendation of the Hearing Officer in Blue Cross' 1976-77 rate proceedings. This report concluded that the "necessary or desirable" language of the statute "may be used as a limiting standard in evaluating payments to providers *as a component of rates.*" (Emphasis added.) Our conclusion that the statute does not limit Blue Cross' obligation to pay claims predicated on existing contracts is bolstered by the statutory language which provides that "[a] health care service plan corporation shall impose no restrictions on the physician who treats a subscriber as to methods of diagnosis or treatment \*\*\*." (Ill. Rev. Stat., 1982 Supp., ch. 32, par. 555.) This prohibition indicates a legislative intent to maintain the traditional physician-patient relationship and to insulate the physician's exercise of independent judgment and discretion from constraints developed by insurance companies. We conclude therefore that the Act does not limit Blue Cross' obligation to pay under the instant contracts and accordingly does not constitute affirmative matter sufficient to avoid the thrust of plaintiffs' complaint.

■ Blue Cross also argues that the Department of Insurance has ordered Blue Cross to deny coverage based on medical necessity evaluations. As support for this assertion, Blue Cross relies on several orders issued by the Department of Insurance. Blue Cross argues that because payment of claims is largely the determining factor in establishing the rates which Blue Cross may charge for coverage, the Department of Insurance will only sanction claim payments that are "necessary or desirable." Initially, we note that most of the orders which Blue Cross cites were entered in rate-setting proceedings. In this context the purpose for which the Department will "sanction" Blue Cross' claim payments becomes clear: the Department of Insurance will not allow payments which were neither necessary nor desirable to form the basis for the establishment of premium rates. This is made even clearer in the report and recommendation in the above 1976-77 rate proceeding statement already quoted that the "necessary or desirable" language of the statute "may be used as a limiting standard in evaluating payments to providers *as a component of rates.*" (Emphasis added.) This cannot be equated with requiring Blue Cross, regardless of contractual provisions, to deny claims for services which it determines independently to be medically unnecessary.

Further examination of the orders cited by Blue Cross reveals that none of them may fairly be characterized as requiring Blue Cross

to deny claims for unnecessary services. The Insurance Director's order of November 14, 1975, required Blue Cross to "[i]nstitute a procedure whereby any claim settlement resulting in a reduction of benefits based upon an apparent lengthy or unnecessary hospitalization shall be substantiated by facts and not assumptions." Contrary to Blue Cross' assertion, this order does not mandate Blue Cross to refuse to pay otherwise valid claims based on an evaluation of medical necessity, but rather orders Blue Cross not to deny a claim because the length of hospitalization exceeds an arbitrary "cut-off" point. The next "order" on which Blue Cross relies is the Director's formulation of a rate-base issue: "Are the proposed filed rates based only upon costs incurred for that care which is necessary or desirable for the promotion or preservation of a person's mental or physical health?" The obvious import of this query is that an inflated basis of payment should not be used to increase the rates which Blue Cross may charge for coverage. As indicated above, this is quite different from requiring Blue Cross, regardless of contractual provisions, to evaluate claims independently for medical necessity. The next order on which Blue Cross relies requires Blue Cross to notify "subscribers *of the reasons for denial in readily understandable language* whenever [Blue Cross] denies reimbursement for care determined not to be covered, inappropriate [*sic*] or unnecessary [*sic*]." (Emphasis added.) This order does not require a necessity determination in the absence of contractual authorization and we will not interpret it to provide such a contractual exclusion by implication. The next order which Blue Cross calls to our attention rejected Blue Cross' proposed rider providing for medical necessity denials and does not support Blue Cross' position.

Blue Cross has characterized these orders as "the Department's enforcement policy," but nothing in any of the orders supports Blue Cross' position in this court. We conclude that Blue Cross is not required by the Department of Insurance to conduct medical necessity evaluations in the absence of contractual authorization.

■ Blue Cross next contends that the unambiguous language of the governing contracts provides coverage only for hospital care that is medically necessary. Blue Cross points to the contract of plaintiff Allison as an example and admits that this contract is identical to those of several other plaintiffs and "closely resembles the contracts" of the remaining plaintiffs. Blue Cross contends that the medical necessity requirement is included in the contractual definitions of the terms "hospital" and "hospital service." The Allison contract defines "hospital" as

"any institution governmentally licensed as such for the care of

the sick which provides service under the supervision of a Physician to patients whose conditions require continuous confinement to bed, including the regular provision of bedside service by registered nurses. ***."

"It is axiomatic that '[a]mbiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured.' (*Bell v. Continental Assurance Co.* (1970), 123 Ill. App. 2d 274, 278, 260 N.E.2d 114.)" (*Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 715, 365 N.E.2d 638.) The contractual provision above quoted does not, however, even rise to the level of ambiguity; nothing in the definition gives any warning that treatment which the insurer determines to be medically unnecessary is excluded from coverage. Blue Cross also points out the contractual definition of "hospital service" which "means the necessary services and supplies listed in II(A)(1) which are provided by a Hospital and regularly included in its charges." Paragraph II(A)(1) lists a variety of hospital services but does not provide that Blue Cross may make an independent medical necessity evaluation. In the absence of an explicit statement that Blue Cross may make such an independent evaluation, the insured is justified "in relying on the good faith judgment of his treating physician as to the medical necessity of services prescribed." (*Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 717-18, 365 N.E.2d 638.) We note that in *Van Vactor*, although the relevant contract there did incorporate the term "medical necessity," summary judgment against Blue Cross was affirmed on review because the contract did not explicitly warn the insured that Blue Cross, rather than the insured's physician, would determine if the care rendered was necessary. In the instant case, the relevant contracts do not even contain the phrase "medical necessity," and we are constrained by the holding in *Van Vactor* to conclude that no exclusion based on medical necessity is contained in these contracts. Parenthetically, we observe that Blue Cross has not alleged that the care in question was prescribed in bad faith by the plaintiffs' physicians. Nothing in this opinion should be construed as foreclosing an exclusion from coverage for bad faith prescriptions of care. See *Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 720-21, 365 N.E.2d 638.

▪ It is appropriate for us to note here that, despite criticism from some authorities (see, *e.g.*, 1C Appleman, Insurance Law and Practice sec. 705.35 n.6 (1981)), we think *Van Vactor* remains analytically sound. Blue Cross' brief has focused on the policy considerations associated with reducing unnecessary medical treatment and the con-

comitant cost of insurance premiums. This policy analysis is one-sided, however; the other side which we must consider is the legitimate expectation of the insured that coverage will be provided unless a specific exclusion applies. (*Schmidt v. Equitable Life Assurance Society of the United States* (1941), 376 Ill. 183, 190-91, 33 N.E.2d 485.) Our supreme court's consistent application of the rule of construction cited in *Schmidt* (see, *e.g.*, *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 379-80, 400 N.E.2d 921 (and cases cited therein); *St. Paul Fire & Marine Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209, 215, 370 N.E.2d 1058; *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 179, 370 N.E.2d 1044) indicates a conscious determination that the latter policy will prevail. This has particular application in the instant case in that other methods (*e.g.*, hold harmless agreements running from health care providers to insureds in conjunction with independent necessity review) would operate to lower health care costs without depriving the consumer of the protection for which he has paid. Accordingly, we conclude that *Van Vactor* remains a sound explication of Illinois law. Because Illinois case law provides precedent adequate to dispose of the question presented, we have no need to resort to the cases from other jurisdictions which Blue Cross cites in its brief.

In summary, we agree with the trial court that count I of plaintiffs' complaint states a cause of action not avoided by other affirmative matter and we conclude that the motion to dismiss was properly denied as to this count.

■ The second issue for review is whether a class action is appropriate to an adjudication of this case. Section 2—801 of the Code of Civil Procedure provides:

"An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." (Ill. Rev. Stat. 1981, ch. 110, par. 2—801.)

In the instant case, the trial court specifically found that each of these

requirements was satisfied. The decision to certify a class is a matter committed to the sound discretion of the trial court and will be reversed only upon a clear abuse of discretion or the application of impermissible legal criteria. (*Schlenz v. Castle* (1981), 84 Ill. 2d 196, 203, 417 N.E.2d 1336, *appeal dismissed* (1981), 454 U.S. 804, 70 L. Ed. 2d 73, 102 S. Ct. 76.) The scope of our review is limited to an assessment of the trial court's exercise of discretion and does not extend to an independent, *de novo*, evaluation of the facts alleged to justify litigation of the case as a class action. *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 464-65, 389 N.E.2d 565, *cert. denied* (1979), 444 U.S. 916, 62 L. Ed. 2d 170, 100 S. Ct. 230.

The first requirement under the statute is that the class must be so numerous that joinder of all members is impracticable. (Ill. Rev. Stat. 1981, ch. 110, par. 2—801(1).) The allegation in the complaint that the class consists of over 1,000 members provides an ample basis for the trial court's conclusion that joinder of all members is impracticable. See *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 594, 410 N.E.2d 902.

■ The second requirement under the statute is that there are questions of law or fact common to the class and which predominate over any questions affecting only individual members. (Ill. Rev. Stat. 1981, ch. 110, par. 2—801(2).) Blue Cross argues that the need for proof, on a case-by-case basis, of the attending physician's actual determination of medical necessity requires reversal of the trial court's ruling on the ground that the common questions of law or fact do not predominate. Initially, we note that unlike *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565, *cert. denied* (1979), 444 U.S. 916, 62 L. Ed. 2d 170, 100 S. Ct. 230, in the instant case there has been no prior determination of the common issues. The contention that case-by-case proof is required to substantiate the attending physician's determination was considered and rejected by this court in *Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 720-21, 365 N.E.2d 638. *Van Vactor* impliedly held that, for the purpose of determining insurance coverage, the decision by a physician to hospitalize a patient warrants a presumption, in the absence of proof of fraud, duress or bad faith, that the physician has made a determination of medical necessity. (See 50 Ill. App. 3d 709, 720-21.) Blue Cross argues that no "irrebuttable" legal presumption of propriety attends the physician's determination, and we agree.

"Certainly if Blue Cross were to produce *clear and convincing* evidence of fraud, duress or bad faith in any of the *** identified claims, or any of the additional subscribers found to be

within the class, the court would deal appropriately with that claim. However, 'the hypothetical existence of individual issues is not a sufficient reason to deny the right to bring a class action.' *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538, 155 N.E.2d 595.)" (Emphasis added.) *Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 721, 365 N.E.2d 638.

*Scott v. Ambassador Insurance Co.* (1981), 100 Ill. App. 3d 184, 426 N.E.2d 952, is inapposite to the case at bar in that the " 'ampliate array of causative, contributive or influencive factors' " identifiable in *Scott* (100 Ill. App. 3d 184, 188, 426 N.E.2d 952, quoting *Morrissy v. Eli Lilly & Co.* (1979), 76 Ill. App. 3d 753, 762, 394 N.E.2d 1369) is not present in the instant case. Accordingly, the trial court was well within its discretion in determining that the issue of contract construction predominated over any questions affecting only individual members. See *Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 721, 365 N.E.2d 638.

■ The third statutory requirement for the maintenance of a class action is that the representative parties will fairly and adequately protect the interests of the class. (Ill. Rev. Stat. 1981, ch. 110, par. 2—801(3).) Blue Cross contends that the representative plaintiffs are unable to represent the class because of antagonistic interests arising from potential class members concerned only with coverage for psychiatric care and others concerned with nonpsychiatric issues. Blue Cross does not indicate how this distinction may be equated with antagonism. Under the Illinois statute, there is no "typicality" requirement (compare Ill. Rev. Stat. 1981, ch. 110, par. 2—801(3), with Fed. R. Civ. P. 23(a)(3)), and this absence "should insure that the duty to represent fairly and adequately will not be confused with a similarity in claims ***." (Ill. Ann. Stat, ch. 110, par. 2—801, Historical and Practice Notes, at 92 (Smith-Hurd 1983).) Hence, a class representative may not be disqualified merely because his claim is not exactly the same as the claims of other potential class members. As Blue Cross notes, however, where the representative party *seeks relief* antagonistic to the interests of class members, the representation is not fair and adequate. (*Client Follow-Up Co. v. Hynes* (1982), 105 Ill. App. 3d 619, 625, 434 N.E.2d 485.) In *Client Follow-Up*, the representative plaintiffs sought attorney fees from the other class members. Because there was no "common fund" created by the success of the underlying action, the court reasoned that any judgment for attorney fees would have to be paid by the class members. The interests of the class representatives were therefore antithetical to those of the

class members, and the class representatives accordingly could not fairly and adequately protect those interests. In the instant case, Blue Cross has not shown, except through speculation in its brief, how the relief sought by the class representatives would adversely affect the interests of the class members. Accordingly, we cannot hold that the trial court abused its discretion in certifying the class representatives. However, should such a conflict in interest be developed by competent evidence at an appropriate hearing on the merits, the trial court may reconsider the adequacy of representation for those members with conflicting interests. *Frank v. Teachers Insurance & Annuity Association of America* (1978), 71 Ill. 2d 583, 590, 376 N.E.2d 1377.

■■ ■ The fourth requirement under the statute for the maintenance of a class action is that the class action is an appropriate method for the fair and efficient adjudication of the controversy. (Ill. Rev. Stat. 1981, ch. 110, par. 2—801(4).) Blue Cross argues that a class action is an inappropriate method of adjudication because "individualized" notice would be grossly unmanageable or impossible. This argument confuses the requirements of the cited statutory provision (which mandates a consideration of the relative economy and efficiency of a class action (*McCabe v. Burgess* (1979), 75 Ill. 2d 457, 468-69, 389 N.E.2d 565, *cert. denied* (1979), 444 U.S. 916, 62 L. Ed. 2d 170, 100 S. Ct. 230)) with the provisions of section 2—803 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—803). Section 2—803 provides in relevant part:

> "Upon a determination that an action may be maintained as a class action, or at any time during the conduct of the action, the court *in its discretion* may order such notice that it deems necessary to protect the interests of the class and the parties." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 110, par. 2—803.)

The statutory requirement of notice is thus not absolute; rather, whether notice is to be given at all and the kind of notice which may be required are matters for the trial court's discretion. The exercise of this discretion is, of course, limited by the dictates of due process. Due process, however, does not require individual notice in all circumstances. (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 312, 335 N.E.2d 448.) Our supreme court has indicated that "[t]he question of what notice must be given to absent class members to satisfy due process necessarily depends upon the circumstances of the individual action. (*Frank v. Teachers Insurance & Annuity Association of America* (1978), 71 Ill. 2d 583, 593.)" (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 15, 428 N.E.2d 478, *cert. dismissed* (1982), 456 U.S. 914, 74 L. Ed. 2d 249, 103 S. Ct. 484.) In *Miner*,

the nonresident class members lacked the requisite "minimum contacts" with this State to support an exercise of *in personam* jurisdiction. The supreme court held that personal notice to these class members was required by due process and noted that the identity and address of each nonresident class member could be readily obtained from the defendant's files. (87 Ill. 2d 7, 15, 428 N.E.2d 478, *cert. dismissed* (1982), 456 U.S. 914, 74 L. Ed. 2d 249, 103 S. Ct. 484.) In the instant case, the potential class members are residents of Illinois and thus one of the major obstacles to class litigation present in *Miner* is lacking here. Additionally, the absence of antagonism between the interests of the class members and the representative parties lessens the need for individual notice. (*Client Follow-Up Co. v. Hynes* (1982), 105 Ill. App. 3d 619, 625, 434 N.E.2d 485.) Assuming, *ad arguendo*, that individual notice is impossible as Blue Cross claims, the objection to class litigation is merely hypothetical because notice may not be a necessary component of this suit. The trial court has not ruled explicitly on the issue of notice and we do not read the order of class certification as implicitly holding that no notice is required. Under these circumstances, the determination of questions of notice should be made in the trial court before the issue is presented to this court. (See *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 594-95, 410 N.E.2d 902.) Accordingly, we hold that, *at this time*, the inability to provide individual notice to all class members is not a bar to proceeding as a class action. We conclude that Blue Cross has shown no abuse of the trial court's discretion. We also caution that nothing in the foregoing discussion should be construed as indicating an opinion as to what notice, if any, the trial court should actually require when it does rule on this issue.

■■■ The final issue for review is whether the Illinois Department of Insurance should be joined as a necessary party. (See Ill. Rev. Stat. 1981, ch. 110, par. 2—405.) The standard of review of a trial court's refusal to require joinder of a party is whether the trial court abused its discretion. (*Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 267, 398 N.E.2d 278.)

> "A necessary or indispensable party is one whose presence in the suit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence [citations]; (2) to reach a decision which will protect the interests of those who are before the court [citations]; or (3) to enable the court to make a complete determination of the controversy [citation]." (79 Ill. App. 3d 264, 268-

69, 398 N.E.2d 278.)

Blue Cross' argument that the Department is a necessary party rests on the assumption that "a disputed practice results from the agency's activities." As we have already decided, the Department has not required Blue Cross' disputed practice. Interestingly, the Department filed an affidavit in the trial court stating that the Department "is aware of no provision of the Act [the Non-Profit Health Care Service Plan Act (Ill. Rev. Stat. 1981, ch. 32, pars. 551 through 562i)] which would permit the Department to render interpretations of contracts between [Blue Cross] and its subscribers; or to adjudicate the rights of such parties ***." The affidavit concluded that no decision of the circuit court in the instant case could "in any way detract" from the Department's regulatory activities. In light of these circumstances, we conclude that the Department does not qualify as a necessary party for any of the reasons enumerated above. We therefore cannot hold that the trial court abused its discretion in failing to require joinder of the Department.

For the foregoing reasons, we affirm the orders of the circuit court.

Affirmed.

WILSON, P.J., and LORENZ, J., concur.